85  671
89  493

85  671
94  321

CASE 81—PETITION EQUITY—JUNE 2.

# Power, &c., v. Hafley, &c.

APPEAL FROM CASEY CIRCUIT COURT.

DESCENT AND DISTRIBUTION—ADOPTION.—Where an adopted child,. made capable by statute of taking and holding by descent the estate of the person adopting him, dies before such person, leaving children, those children inherit the estate of the person who adopted their deceased parent as if they were his grandchildren.

LEWIS EDELEN FOR APPELLANTS.

1. Such an act of adoption as that under which appellants claim creates: the adopting parent a *propositus* from whom a line of descent is cast pursuant to the statute of descent, substituting an adoptive child for a natural one for all purposes, except as expressly limited by the statute under which the adoption is had; and the *jus representationis* attaches as fully to the adoptive child as to the child by blood. (Acts. 1841-2, p. 131; Myers' Supplement, p. 258; Rev. Stats., chap. 30, sec. 6; Gen. Stats., chap. 31, secs. 17 and 18; *Ibid.*, sec. 2; II Black. Com., p. 10; Drain, &c., v. Violett, &c., 2 Bush, 157; Berry v. Owen's Heirs, 5 Bush, 452; Humphries v. Davis, 100 Ind., 274; Vidal v. Commagere, 13 La. Ann., 516; Ross v. Ross, 129 Mass., 243; Burrage v. Briggs, 120 Mass., 103; Wagner v. Varner, 50 Ia., 532.)

2. In this State all statutes are to be construed with a view to carry out the intention of the Legislature. (Gen. Stats., chap. 21, sec. 15; Rev. Stats., chap. 21, sec. 15.)

HARRISON & BELDEN OF COUNSEL ON SAME SIDE.

GEO. DENNY, JR., FOR APPELLEES.

An act of adoption does not include within its benefits the children of the adopted child or other persons, unless specifically designated by

the act itself. (Acts 1841-42, pp. 131 and 132; Henrietta Bambizel *et al.* v. Elizabeth Ferrel, 14 Am. Law Reg. (N. S.), 677, *et seq.;* 23 Am. Law Reg. (U. S.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

In 1842, Frederick Hafley, who was desirous of adopting Sylvania Floyd, his infant sister-in-law, who was living with him as a member of his family, induced the Legislature of this State to pass an act which reads as follows : " Whereas, it is represented to the present General Assembly of the Commonwealth of Kentucky that Frederick Hafley, a citizen of Casey county, is desirous of having the name of Sylvania Floyd, a girl now living in his family, changed to that of Sylvania Hafley, and that said Sylvania should be adopted as his legal heir, and take his estate by descent, as though she had been his lawful child ; therefore,

" *Be it enacted by the General Assembly of the Commonwealth of Kentucky,* That the name of the said Sylvania Floyd be, and the same is hereby, changed to that of Sylvania Hafley, by which name she shall hereafter be styled and known ; and that she may be capable of taking and holding, by descent, the estate of said Frederick Hafley, real, personal and mixed, in as full and as complete a manner as if she was his lawful child. Approved January 22, 1842."

Sylvania Hafley, after her adoption, married ―――― Power. Several years after said marriage she died, leaving children—the appellants. After her death, Frederick Hafley died intestate. The appellants, as the children of Sylvania, claim the estate of Frederick Hafley as his legal representatives ; and as such,

brought suit in equity, in the Casey circuit court, for the purpose of establishing their right to Hafley's estate, and having the same divided among themselves. The appellee, Cynthia Hafley, the widow of Frederick Hafley, resisted the appellants' right to the estate, and demurred to their petition upon the ground that appellants had no right to the estate. The lower court sustained the demurrer, and dismissed the petition.

The contention of the appellees is, that Sylvania Power having died during the life-time of her adopted father, her children could not inherit his property, because her relation to the adoptive father and her right to inherit his estate as his adopted daughter being purely personal, the right died with her. In other words, the relation of adoptive father and adopted daughter, which existed between Frederick Hafley and Sylvania, was a purely legal relation, which was personal in its character, and that Sylvania's right to inherit his estate by virtue of that relation depended upon her surviving him, and she having died before he did, the legal relationship was wholly dissolved; and her children, therefore, could not inherit from the adoptive father in her stead.

The common law made no provision for adopting children. Hence, we get no light from that law to guide us in the present investigation. Most of the States of the Union have, within the last few years, enacted general laws providing for the adoption of children, and making them the legal heirs of the adopting parents. Of course, the laws of these States are not uniform in substance—the laws of each more or less limit and restrict the legal status of the

vol. 85.—43.

adopting parent and the adopted child. And while the reported adjudications of these States construing the adopting statutes are sparse, yet they nearly all agree in fixing the legal status of the adopted child as follows : That it is the event of adoption that fixes, under the law authorizing the adoption, the legal status of the adopted child ; and the child, by the event of adoption, becomes the legal child of the adopting parent, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock, save in so far as the exceptions in the statute authorizing the adoption declare otherwise. And when the statute authorizes a full and complete adoption, the child adopted thereunder acquires all of the legal rights and capacities, including that of inheritance, of a natural child, and is under the same duties. Humphries v. Davis, 100 Ind., 280 ; Wagner v. Varner, 50 Iowa, 532 ; Barnes v. Allen, 25 Ind., 222 ; Burrage v. Briggs, 120 Mass., 103 ; Ross v. Ross, 129 Mass., 243.)

By the request of Frederick Hafley, the Legislature made Sylvania his legal heir, and invested her with as full capacity to take and hold his estate by descent as if she was his natural child. Thus was her legal status fixed by a law operating directly upon her and Hafley, and which contained no restrictions or limitations whatever. She was made a full legal heir, and was put precisely upon the same footing, so far as taking and holding Hafley's property by descent was concerned, as a natural child. So, it would seem to follow, as a logical sequence, that the children of Sylvania, she having died before Hafley, take under our laws of descent as her direct representatives.

As before stated, the common law made no provision in reference to adopting children. But the civil law made ample provision in that regard. And presuming that the Legislature, in passing the act *supra*, and subsequently passing a general law upon the same subject, had in view the principles of the civil law, we have, therefore, deemed it proper to consult the principles of that law in arriving at the construction we have given said act. By that law, the civil, the adopted child was "assimilated in many points to a son born in lawful matrimony." The adopted child retained all of the family rights resulting from its birth, and there was secured to it all of the family rights produced by the adoption. (Sanders' Justinian, 103, 105, 109.) Also, in the case of Vidal v. Commagere, 13 La., 519, it is said that by the civil law the effect of adoption was such, "that the person adopted stood not only himself in relation of child to him adopting, but his children became the grandchildren of such person."

So, taking the logical sequence of the language of the act *supra*, aided as it is by the principles of the civil law, the conclusion is inevitable that the appel·lants are the legal grandchildren of Frederick Hafley, and as such are entitled to share in the distribution of his estate under our laws of descent.

The word "kindred" in section 1, chapter 31, Gen·eral Statutes, is not necessarily confined to blood relations, nor is the word "children," in subsection 1, necessarily confined to children born in lawful wedlock. For those sections "must be understood as merely laying down the general rules of inheritance, and not as completely defining how the status is to be

created which gives the capacity to inherit." Section 1 does not undertake to define the word "kindred;" the word may include in its meaning a relation by blood and a relation in law. The word "children" may include in its meaning children born in lawful wedlock and children made legitimate by the marriage of their parents, and children by adoption, for the latter are the legal children of their adoptive parents. So, whenever the kindred by blood or in law have the right to inherit, either by general or special law, section 1 *supra* includes them. And whenever the children have a right to inherit, either by general or special law, subsection 1 includes them. (Drain, &c., v. Violett, &c., 2 Bush, 157; Ross v. Ross, 129 Mass., 267.) Therefore, there is nothing in the statutes of descent and distribution that militates against the construction we have given the act under consideration.

In reaching the conclusion that one, by adopting another, may make that other his own heir, with full capacity to inherit his estate, and that the children of the adopted may also inherit from him, we do not wish to be understood as deciding that the adopting parent can make the adopted child the heir of other people so as to entitle such child to inherit property that does not come directly from the adopting parent. The case at bar does not involve that question, and we prefer to reserve any expression of opinion thereon until the question actually arises.

The judgment of the lower court sustaining the demurrer to the appellants' petition and amended petition is reversed, and the case is remanded with direction to overrule the same, and for further proceedings consistent with this opinion.