## CASPER *v.* HELVIE ET AL.

[No. 11,925.  Filed January 13, 1925.  Rehearing denied April 10, 1925.  Transfer denied May 21, 1925.]

1. WILLS.—*Adopted child not included in devise to "child" or "children" unless the will clearly manifests that intention.*— When the word "child" or "children" is used in a will, it does not usually include an adopted child unless it is manifest from the language used and the surrounding circumstances that the testator intended to include such child.  p. 172.

2. WILLS.—*Words in a will written by some one unlearned in the law will be given their usual and common meaning, unless contrary intent evident.*—Words used in a will drafted by the testator, or by any one unlearned in the law, will be given their usual and common meaning unless there is something in the will or situation of the testator or other circumstances indicating a different intention.  p. 179.

3. WILLS.—*Words "child" and "children" are not technical, but ordinarily signify a descendant in the first degree.*—The words "child" and "children" are not technical terms that require the evidence of an expert to define, but ordinarily signify a male or female descendant in the first degree.  p. 179.

4. WILLS.—*Adopted child, when included in words "child" or "children."*—Where a testator makes provision in his will for his own "child or children" by that designation, an adopted child will be included unless the will shows an intention to exclude such child or children, but where provision is made for the "child or children" of some other person, an adopted child is not included unless other language in the will clearly shows an intent to include such child or children.  p. 180.

5. WILLS.—*Adopted child not included in devise to "children" of devisee.*—In a will written by one unlearned in the law, which devised to testator's son and his wife a life estate in certain land, and provided that on his death leaving "children," one-half should go to his wife and the other half to his "children," that term will not include a child adopted after the testator's death (*Bray* v. *Miles*, 23 Ind. App. 432, distinguished, and overruled so far as in conflict).  p. 180.

From Delaware Circuit Court; *Victor Simmons,* Special Judge.

Action by Charles W. Casper against Effie B. Helvie and another.  From a judgment for defendants, the plaintiff appeals.  *Reversed.*  By the second division.

*Warner & Warner,* for appellant.

*Leffler, Ball & Leffler,* for appellees.

McMAHAN, J.—Action by appellant against appellees for partition of certain real estate, which appellant contends is owned by him and appellee, Effie B. Helvie, as tenants in common. From a judgment sustaining a demurrer to the complaint, appellant appeals.

The complaint alleges that George A. Helvie, who died in 1894, by his will executed in 1893 and probated in March, 1894, directed his administrator "to take and pay out $1,000 for real estate" for his son George F. Helvie, and to "take the deed in his name and his wife's name jointly his natural lifetime and in the event of his death leaving children one-half shall go to his wife and one-half go to his children and if there is no children one-half goes to C. W. Casper." Pursuant to the directions in said will, the executor purchased the real estate described in the complaint, the deed therefor being lost. On July 11, 1903, pursuant to an order of the Delaware Circuit Court, a new deed was made by a commissioner to take the place of said lost deed. By this deed, such commissioner conveyed the real estate "to George F. Helvie and Effie B. Helvie, his wife, jointly, for and during the life of said George F. Helvie; an undivided one-half interest in fee simple to Effie B. Helvie, subject to said life estate aforesaid; and an undivided one-half interest in fee simple to the surviving legitimate children of George F. Helvie or to Charles W. Casper, subject to said life estate aforesaid, on the following conditions, namely, that if the said George F. Helvie die leaving children, him surviving, then and in that event the undivided one-half in fee simple to his children him surviving, but if he die childless, then and in that event the undivided one-half in fee simple to Charles W. Casper." George F. Helvie died without having had any child born to him. He did, how-

ever, on April 10, 1908, adopt Jessie E. Helvie, who was then and still is a minor under the age of twenty-one and who is not related to said testator. Charles W. Casper is a grandson of the testator.

Appellant, by his complaint, after alleging the above facts, asked that he be adjudged the owner of an undivided one-half of the real estate described and for partition.

Appellant contends that the word "children" as used by the testator in his will and as carried into the deed must be construed as meaning children born to George F. Helvie and not adopted children and that appellee Jessie, being an adopted child, is not the owner of any part of the real estate involved. Appellees contend that appellee Jessie, by virtue of the adoption, became the child of her adopting parent George F. Helvie to all intent and purpose the same as if she was a natural born child and that the testator must be presumed to have used the word "children" as meaning children by adoption as well as by birth.

All parties agree that the intention of the testator must control. Appellant refers to the fact that appellee Jessie was not born until long after the death of the testator and was not adopted until after the execution of the deed, and says it is clear the testator could not have intended to include her in the term children, and that the fact that she is not of common blood with the testator is also an important fact in determining the intention of the testator.

There is no question but that appellee Effie is the owner of a one-half interest in the real estate in question. The controversy is between appellant and appellee Jessie, and, in our discussion of the questions involved, we shall refer to her and treat her as if she were the only appellee.

Section 915 Burns 1926, §870 Burns 1914, Acts 1883

p. 61, provides that a child after adoption shall "be entitled to and receive all the rights and interest in the estate of such adopting father and mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother." This is followed by a provision to the effect that if an adopted child dies without leaving a husband or wife, or issue, seized or owning any property by gift, devise or descent from the adopting parent, such property shall descend to the heirs of the adopting parents. Section 916 Burns 1926, §871 Burns 1914, Acts 1885 p. 122, provides that: "After the adoption of such child, such adopted father and mother shall occupy the same position towards such child that he or she would if the natural father or mother, and be liable for the maintenance, education and every other way responsible as a natural father or mother."

Appellee cites *Markover* v. *Krause* (1892), 132 Ind. 294, 17 L. R. A. 806; *Humphries* v. *Davis* (1885), 100 Ind. 274, 50 Am. Rep. 788, and several other cases decided by our Supreme Court before the execution of the will now under consideration, and says that by those decisions the court had fixed the status of adopted children and placed them in the position of children born to the adopting parent and gave the word "children" as used in the statute a well-settled meaning, meaning both natural and adopted children, and that it must be presumed the testator used the word "children" as including adopted children. The questions before the court in each of the cases cited related to the rights of an adopted child to inherit from the adopting parent, the right of the adoptive parent to inherit from the adopted child or the right of the natural mother or a blood relative of the adopted child to inherit the property of such child which came to it through the adoptive parent. None of them related to the right

of an adopted child to take through the will of a third party. The cases cited are clearly distinguishable from the one now before us and are not in point. We are not concerned with a question of inheritance. Neither are we called upon to construe the statute concerning the adoption of children. We are interested in ascertaining the intention of George A. Helvie when he made his will and in giving effect to that intention when ascertained.

Appellee cites and relies upon *Bray* v. *Miles* (1899), 23 Ind. App. 432, in support of the contention that the testator by using the word "children" presumably intended to include adopted children. Appellee says if the testator had desired to exclude an adopted child of George F. Helvie he should have done so by the use of the expression, "children of his body," "children of his blood," "to his issue," or some similar expression. In the Bray case, the adoption took place prior to the death of the testator, while in the instant case, the adoption did not take place until more than fourteen years after the death of the testator, and it is alleged in the complaint and admitted by the demurrer, that the testator had no knowledge that his son George F. was contemplating the adoption of a child. In this connection, appellee says that "in the absence of a statute specifically and definitely fixing the status of an adopted child or children, like the statute of Indiana fixes it, the word, 'child' or 'children,' usually includes an adopted child." If appellee were claiming the property through a will of her adopting parent, there would be some merit in her contention. But that is not this case. It is true as stated by appellee that the rule is stated in 5 Am. and Eng. Ency. of Law p. 1098, as follows: "The terms 'child' or 'children' usually include an adopted child," and that the author cites *Power* v. *Hafley* (1887), 85 Ky. 671, 4 S. W. 683; *Stanley* v. *Chandler*

(1880), 53 Vt. 619; and *Keegan* v. *Geraghty* (1881), 101 Ill. 26, in support of the statement. This court in *Bray* v. *Miles, supra,* unfortunately, and it seems without investigating the authorities, adopted and accepted the above statement in the Encyclopedia of Law, as a correct statement of the law.

In *Power* v. *Hafley, supra,* the court held that the word children is not "necessarily confined to children born in lawful wedlock," and that the word may include children born in lawful wedlock, children made legitimate by the marriage of their parents, and children by adoption.

In *Keegan* v. *Geraghty, supra,* one Michael Keegan and wife, while living in Wisconsin and having no children, adopted Mary Anna Keegan. They later moved to Illinois. This wife died and Michael married a second time and had one child born to him as a result of this marriage, to whom he by will gave all his property. This daughter died leaving as her only possible heirs a grandfather and the adopted child, Mary Anna Keegan, who claimed to be a half-sister and the sole heir of the deceased child. The court, in discussing the effect of the adoption, said: "The proceeding of adoption is one entirely between such parents and the child, at the instance, by the consent, and upon the petition of the parent or parents. The artificial relation from adoption is established between these parties, and the statute defines what shall be the duties and rights of the parties from this relation between them. As we construe the statute, as between the parties to the transaction the adopted child is deemed, for the purpose of inheritance from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock." And it was there held that the adopted child could not inherit from the natural child of the adoptive father, the court saying: "As against the adopted

child the statute should be strictly construed, because it is in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature, which has prevailed from time immemorial." *Stanley* v. *Chandler, supra,* does not discuss the question and does not support the statement.

The rule on this subject, is, in our judgment, correctly stated in 40 Cyc 1452 as follows: "The word 'children' does not usually include an adopted

1. child, notwithstanding a statutory provision investing an adopted child with the rights of inheritance from the adopting parent, unless it is manifest from the language of the will and the surrounding circumstances, as in connection with a statute, that the testator intended to include such child."

*Martin* v. *Aetna Ins. Co.* (1881), 73 Me. 25, cited in *Bray* v. *Miles, supra,* was an action on an insurance policy payable to the wife of the insured and in case of her death to their children. The insured had no children other than an adopted child, the adoption being had before the child was one day old. Every possible means had been taken by the adoptive parents to furnish all the evidence possible to show that he was their child and to conceal from him all information to the contrary and the child never knew he was not in fact their child until after the death of the insured and his wife. The facts were held to conclusively lead to the inference that the intention was to provide for the adopted child as well as for any child they might have. But in *Kohler's Estate* (1901), 199 Pa. 455, 49 Atl. 286, where the adoption took place after the execution of the will and after the death of the testator, the court said: "* * * that event therefore was not reasonably within the contemplation of the testator."

In *Munie* v. *Gruenwald* (1919), 289 Ill. 468, 124 N.

E. 605, the will gave the property to the testator's children after the death of his wife, with a provision that in case of the death of either of the children during the lifetime of the wife, the share of the deceased child should go to the "children" of such child. It was there held that the word "children" included an adopted child of one of the beneficiaries. But it appeared that the adoption was made several years before the execution of the will; that the deceased child was a married daughter and had no children other than the adopted child; that the testator knew of the relation existing between his daughter and her adopted child and knew that this adopted child was everywhere recognized as the child of his daughter. He also knew that if this daughter survived his wife, the remainder would vest in the daughter and, on her death, would pass to the adopted child as an heir of his daughter.

*In re Truman* (1905), 27 R. I. 209, 61 Atl. 598, the testator, after making provision for payment of certain specific legacies, bequeathed one-sixth of the remainder to the "children or issue" of a brother who had died twenty-eight years before the date of the will and who many years prior to his death had adopted a child. The deceased brother left surviving him one child born in wedlock and the adopted child, the former having died several years before the execution of the will, leaving four children. The adopted child claimed one-half of the property so bequeathed to the children or issue of the deceased brother. The court found there was a latent ambiguity in the use of the word "children or issue" and permitted parol evidence to be introduced as to the intention of the relatrix by the use of such word, and after stating that the intention of the testator when ascertained must govern, reached the conclusion that she intended to include the adopted child as one of the children of the deceased brother. This case and

*Munie* ·v. *Gruenwald,*. *supra,* were decided upon the theory that there was a latent ambiguity in the will, but that when the circumstances surrounding its execution were considered, it was evidently the intention of the testator that the word "children" should include adopted children.

In *Woodcock's Appeal* (1907), 103 Me. 214, 68 Atl. 821, 125 Am. St. 291, where the will was made eight years after the adoption, the court said: "Where one makes provision for his own 'child or children,' by that designation, he should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child. * * * When in a will provision is made for 'a child or children' of some other person than the testator, an adopted child is not included unless other language in the will makes it clear that he was intended to be included, which is not the case here. In making a devise over from his own children to their 'child or children' there is a presumption that the testator intended 'child or children'· of his own blood."

In *Lichter* v. *Thiers* (1909), 139 Wis. 481, 121 N. W. 153, after setting out and discussing the statute of that state pertaining to the rights of adopted children, which, in substance, is the same as the statute of this state, said: "In some of the authorities referred to, particularly *Woodcock's Appeal,* (103 Me. 214, 68 Atl. 821), the pretty arbitrary rule of construction was adopted that in all cases where 'one makes provision for his own child or children by that designation he should be held to have included an adopted child,' but where one makes provision 'for a child or children' of some other person than the testator, an adopted child is not included unless other language in the will makes it clear that he was intended to be included. * * * In making a devise over from his own children to their 'child

or children' there is a presumption that the testator intended 'child or children' of his own blood. * * *."

In *Schafer* v. *Eneu* (1867), 54 Pa. 304, the devise was to a trustee for the use of a daughter of the testator for life and on her death to be conveyed to her children. After the death of the testator, the daughter died without issue but leaving adopted children, who claimed they were entitled to the property. The court, referring to the statute concerning adoption, said: "The right to inherit from the adopting parent is made complete, but the identity of the child is not changed. One adopted has the rights of a child without being a child." And the same court in *Commonwealth* v. *Nancrede* (1859), 32 Pa. 389, said: "Giving an adopted son a right to inherit, does not make him a son in fact, and he is so regarded in law, only to give the right to inherit."

*In re Puterbaugh.* (1918), 261 Pa. 235, 104 Atl. 601, 5 A. L. R. 1277, it was held that a child adopted after the death of the testator was not within a provision of a will giving a life estate to testator's son with remainder over to his child or children. The court, after calling attention to the fact that the adoption took place after the death of the testator, said: "* * * nothing is to be found in the will suggesting that so far as the testator knew the adoption of a child was then contemplated. Not a single extrinsic fact can be pointed to as indicating that the testator intended that anyone not of his blood should share in his bounty, while the will itself may be searched in vain for any indication tending even remotely to show that he so intended. To give the words of the gift to Harrison's child or children a meaning which would include adopted children would be to enlarge them beyond their natural meaning and proper import." For a further discussion and collection of authorities on this question, see note

5 A. L. R. 1280. See, also, *Miller* v. *Wick* (1924), 311 Ill. 269, 142 N. E. 490, 30 A. L. R. 1407, and note on page 1412.

In *Wallace* v. *Noland* (1910), 246 Ill. 535, 92 N. E. 956, 138 Am. St. 247, 20 Ann. Cas. 607, a father by will divided his property among his four children and the children of a deceased daughter. By one clause of the will, certain real estate was devised to a son, with condition that if the son "should die leaving no heirs," it then went to the other three children. This son married but no children were born to him. In 1899, he adopted several children and died in 1909. The testator died in 1866. The word "heirs" as used in that will having been theretofore construed as meaning children, (202 Ill. 239), the adopted children claimed that they, as adopted children, were given all the rights to which children born in lawful wedlock were entitled. The court, after stating that the statute put an adopted child on an equality with children by birth for the purpose of inheriting from the adopting parent, said: "In other respects than the right of inheriting from the adopting parent the adopted child is unlike children by birth. By adoption he acquires no right to inherit from any one else than the adopting parents. (*Keegan* v. *Geraghty*, 101 Ill. 26.) In that case it was said adoption creates an artificial relation between the parties to the transaction. 'As we construe the statute, as between the parties to the transaction, the adopted child is deemed, for the purpose of inheritance from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock.' It has been said in a number of cases that an adopted child is regarded, in law, as a child only for the purpose of inheritance from the adopting parent, and not the child, in fact, of such adopting parent." In support of the last statement see, *Barnes* v. *Allen* (1865), 25 Ind. 222; *Barn-*

*hizel* v. *Ferrell* (1874), 47 Ind. 335; *Nickerson* v. *Hoover, Admr.* (1917), 70 Ind. App. 343; *Davis* v. *Fogle* (1890), 124 Ind. 41, 7 L. R. A. 485.

In *Phillips, Exr.,* v. *McConica, Gdn.* (1898), 59 Ohio St. 1, 51 N. E. 445, 69 Am. St. 753, it was said, that the statute enables the adopted child to inherit "from its adopter, but not through him.  *  *  *  The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates,  *  *  *  by will or descent, but they cannot be expected to keep informed as to the adoption proceedings in the probate courts of the counties of this state; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors." To the same effect, see, *In re Sunderland* (1883), 60 Iowa 732, 13 N. W. 655; *VanDerlyn* v. *Mack* (1904), 137 Mich. 146, 100 N. W. 278, 66 L. R. A. 437, 109 Am. St. 669, 4 Ann. Cas. 879.

In *Davis* v. *Fogle, supra,* where the contention was that the adoption of a child revoked a will made before the adoption, the court, after reviewing several of the causes relied on by appellee herein, said: "These decisions go as far, it would seem, in holding the legal status of the adopted child to be the same as a natural child, as is warranted by the statute;  *  *  *  These decisions go no further than to hold that the surviving adopting father or mother inherits from the adopted child such property as it inherited from the deceased adopting father or mother.  *  *  *  There is a material difference in the matter of inheritance by an adopted and natural child; also, as to the descent of property owned by them. An adopted child inherits from its natural parents, but not from the relatives of

the adopting parents." And on page 46, the court, in speaking of children born to one and children adopted, said: "The statute gives to the one certain rights, and imposes certain obligations on the adopting parents, but it does not make it the legitimate child and issue of the adopting parents, or a child born to them. One becomes an heir by birth, the other by a judgment of a court."

In *Nickerson* v. *Hoover, Admr., supra,* the testator had four sons and three daughters. The sons and two of the daughters were married and had children when the will was executed. The other daughter was married but had no children. To the sons and daughters who had children, the testator gave certain property absolutely. To the daughter having no children, he gave certain property "forever provided she have heirs, if not then at her death" over. The court viewing the entire will in the light of surrounding circumstances, held that the phrase "provided she have heirs" meant provided children should be born to her, and that the condition was not satisfied by the adoption of a child. In this connection, the court, at page 359, said: "An examination of the decided cases will disclose also that force is given to certain extraneous circumstances, as whether the testator knew that his devisee had adopted a child; whether the adoption preceded his death; whether the adopted child was a stranger to the blood of the testator, and the like. It follows that to an extent each case must be determined from a consideration of the circumstances which it involves, including the language of the will before the court for construction."

*Bray* v. *Miles, supra,* was distinguished from the case then being considered, and attention was called to the fact that the court in the Bray case gave force to the

fact that the child there involved had been adopted by the testator's daughter prior to the testator's death.

The will in the instant case bears evidence of having been written by the testator himself, or by some one with a very limited education and unlearned in the law. And it is only reasonable to suppose that the testator used the word children as ordi-narily and commonly used, meaning a descendant in the first degree, the immediate progeny or offspring. And unless there is something in the will or the situation of the testator or other circumstances indicating otherwise, it is our duty to give the words used by the testator their usual and common meaning. *West* v. *Rassman* (1893), 135 Ind. 278, 294; *Cummings* v. *Plummer* (1884), 94 Ind. 403, 48 Am. Rep. 167; *Skinner* v. *Spann, Exr.* (1911), 175 Ind. 672, 686.

2.

As was held in *Harle* v. *Harle* (1918), 109 Texas 214, 204 S. W. 317, 15 A. L. R. 1261, the words "child or children" are not technical terms that require the evidence of an expert to define. The ordinary signification of child is a male or female descendant in the first degree. See, also, *Stanley* v. *Chandler, supra.*

3.

As was said in *White* v. *Rowland* (1881), 67 Ga. 546, 554, 44 Am. Rep. 731: "The ordinary, popular and legal sense of the word 'children' embraces only the first generation of offspring, and for it to be enlarged further there must either be something in the context showing that a larger signification was intended, or the person using it must know that there neither is nor can afterwards be any person to whom the term can be applied in its appropriate sense." See, also, *Shanks* v. *Mills* (1884), 25 S. C. 358; *Smith* v. *Chapman* (1807), 1 Hen. & M. (Va.) 240, 290; *Echols* v. *Jordan* (1863), 39 Ala. 24, 31; Black's Law Dict., Children.

Where one makes provision for his own "child or children" by that designation, it is quite proper that he should be held to have included an adopted child, and it is the settled law in this state that, in such a case, the word child will include an adopted child, unless there is something in the will to show an intention to exclude an adopted child. But we hold that where a person makes provision in a will for a "child or children" of some person other than the testator, an adopted child is not included unless other language in the will makes it clear that it was intended to be included. In addition to the authorities heretofore cited, see *Russell* v. *Russell* (1887), 84 Ala. 48, 3 So. 900; *Stout* v. *Cook* (1910), 77 N. J. Eq. 153, 75 Atl. 583; *Melek* v. *Curators* (1923), 213 Mo. App. 572, 250 S. W. 614; *Cockran* v. *Cockran* (1906), 43 Tex. Civ. App. 259, 95 S. W. 731; *Hockaday* v. *Lynn* (1906), 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. 672, 9 Ann. Cas. 775; *Wilder* v. *Butler* (1917), 116 Me. 389, 102 Atl. 110, L. R. A. 1918B 119; *Parker* v. *Carpenter* (1915), 77 N. H. 453, 92 Atl. 955; *Eureka Life Ins. Co.* v. *Geis* (1913), 121 Md. 196, 88 Atl. 158; *Blodgett* v. *Stowell* (1905), 189 Mass. 142, 75 N. E. 138; *Walcott* v. *Robinson* (1913), 214 Mass. 172, 100 N. E. 1109; *Matter of Leask* (1909), 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, 134 Am. St. 866, 18 Ann. Cas. 516.

As heretofore stated, the testator in the instant case died fourteen years before the adoption of appellee, not knowing his son contemplated the adoption of a child. There is nothing in the will or the circumstances connected with its execution to indicate that the testator intended to use the word "children" in any sense other than to indicate one standing in the relation of the direct offspring of the son—a child born to

the son. There being nothing to indicate an intention on the part of the testator to use the word children as in- cluding possible adopted children, we hold the court erred in sustaining the demurrer to the complaint.

Barring the one incident of husband and wife's right by reason of the marital relation, our laws of descent and distribution are built on and around the idea of blood kinship. So the fact that the testator made pro- vision for the son and his wife during their joint lives, and that the property was to go to a blood relative of the testator if the son died without children, with the exception that he made provision for the son's wife in case she survived her husband, should not be over- looked in seeking the intention of the testator but should be given some consideration.

*Bray* v. *Miles, supra,* in so far as it is in conflict with this opinion, is overruled.

Judgment reversed, with directions to overrule the demurrer to the complaint and for further proceedings in accordance with this opinion.