# Department Of Welfare v. Brock et al.

December 19, 1947.

William B. Ardery, Judge.

Eldon S. Dummit, Attorney General, and Dennis B. Wooton, Assistant Attorney General, for appellant.

Jesse K. Lewis and Joe Asher for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Brock was in 1935 convicted of murder and sentenced to a life term in the penitentiary. Due to mental trouble he was in December 1937 transferred to Central Hospital at Lakeland for observation. Later in 1938 he was in the Oldham circuit court adjudged to be insane and committed to Lakeland; that judgment recited that Brock had no estate.

From the pleadings and Netherton v. Bradley, 305 Ky. 427, 204 S. W. 2d 594, we learn that Brock's father, a veteran of World War I, had a War Risk insurance policy in which the son was named beneficiary. There had been some difficulty in establishing its validity, however, it was finally approved, resulting in the turning over to Brock's Committee about $13,300.

In May 1945 another inquest was held, ostensibly for the purpose of having a committee appointed, and he was again adjudged insane and recommitted to Lakeland; Netherton was named as Committee. This judg-

ment recited that Brock's estate consisted of approximately $13,000 in the hands of the Committee.

In July 1945 appellant instituted suit against the Committee, later naming the Administrator of Veterans' Affairs as defendant, whereby it was sought to recover of Brock's estate $3,056, or $30 per month for his maintenance at Lakeland from December 1937 to June 1947, relying on the provisions of Sections 203.080 et seq., KRS. In answer the Committee, the Veterans' Affairs Administrator joining, after denying generally the allegations of the petition, set up specifically three grounds of defense. One was that the first judgment of the Oldham circuit court finding Brock to be an insane person was void because no jury was empaneled, and there were certain statutory provisions not observed in the procedure.

Another defense was that since Brock's estate consisted of the proceeds of the insurance policy of the father who was a veteran, it was exempt from the claim of creditors under the terms of Section 454a, Title 38 U. S. C. A., which had been amended in 1935, after our opinions in Department of Public Welfare v. Allen et al., 255 Ky. 301, 74 S. W. 2d 329; Arms' Committee v. Arms, 260 Ky. 634, 86 S. W. 2d 542.

The final contention is based on the admitted fact that Brock had been convicted of a felony, sentenced for a life term in the penitentiary, and the judgment was still in force and effect, therefore Brock was at the time of commitment to Lakeland, at all times since and now, a ward of the Commonwealth, constructively in the penitentiary, and entitled to lodging, maintenance, medical treatment and supplies, wholly at the expense of the Commonwealth, relying on the provisions of Sec. 254 of the Constitution, and Sec. 202.380(3) KRS. The former provides in substance that the Commonwealth shall maintain control and discipline of convicts, provide all supplies and look to their sanitary condition. The statute, supra, relates to the status of the convict upon his transfer from the penal to the hospital institution.

The cause was submitted on plaintiff's demurrer to answer, the court overruling. Plaintiffs elected to plead no further, and the chancellor, not showing in his judg-

ment, nor by memorandum, the ground or grounds upon which he founded his action, dismissed the petition.

On appeal the contending parties have in well prepared briefs taken up and discussed each of the defenses interposed, appellant contending that no one of them presents a legal defense, appellees contending that each was sound in law, and that any one, if good, is sufficient to uphold the chancellor's finding. We agree with the last position taken, and for this reason find it unnecessary to discuss any defense save that of the status of the convict, and the result insofar as plaintiff's claim is concerned; that is, whether or not at all times Brock was an inmate of the penal institution, and under the law entitled to maintenance at the expense of the Commonwealth.

In reaching a conclusion we do not overlook the provisions of Chapter 203 KRS and such sections as relate to the custody, support and maintenance of incompetents committed to State hospital institutions, and the requirements for compensation from the estates of such unfortunate persons, or their relatives whose estates are made liable, but which do not specifically fix liability in cases of transfer.

In brief appellant apparently conceding that the status of the prisoner remains unchanged by reason of the transfer, contends that the laws relating to the transfer, and liability of estates of those committed should not be taken literally, but should be given a broad and liberal interpretation so as to reach the evident intent of the General Assembly that the estates of all committed persons, including convicts should be subjected under the statute. The position is that the transfer of a convict who becomes mentally unbalanced, is merely to restrain the insane person; to protect him and the public during the stay in the hospital, and that there is no reason why he should not pay for his maintenance. It is argued also that there is a recognizable difference; that while an inmate of the penal institution being sentenced to hard labor, he earns his keep, but by reason of the mental condition while in the hospital he is unable, or is not compelled to labor, hence should pay. These assertions are not entirely without reason, but we cannot overlook the specific provisions of the

statutes which definitely fix the status of the convict who is transferred, nor any rights which may be his under the law.

The statutes relating to the transfer go much further than laying out the manner and method; they fix beyond question the status of the transferred convict, and do not serve to deprive him of any rights recognized by the law. The statute relating to transfers under the conditions shown, KRS 202.380, provides that during the time of the prisoner's stay in a State hospital, his status as a convict remains unchanged, this until the termination of his sentence. The authorities in charge have no power to parole or discharge him or grant him any right of visitation. The time such convict spends in the hospital is to be counted as a part of his prison sentence. Thus there can be no doubt but that during his stay in the hospital he is still a convicted prisoner.

We find no case in our jurisdiction bearing directly on the question. However, we do find that other courts have held as we indicate above as to status. Reference may be made to State ex rel. v. Jorgenson, 176 Minn. 572, 224 N. W. 156, 62 A. L. R. 244, which in notes refers to State v. Brouillette, 163 La. 46, 111 So. 491. In the latter case it was held that where a prisoner falls ill in a prison which is not provided with proper hospital facilities, it follows that (the authorities in charge) have no other recourse but to use the hospital facilities available. The question there was of allowance of time, a matter which is fixed by our statutes.

The section of the Constitution, supra, while not explicit is broad enough to justify the conclusion that it is the duty of the Commonwealth to furnish the convict with all supplies, and look to the convict's condition of health. In 50 C. J. 363 it is stated that medical attention is a proper expense of imprisonment. In the same work Vol. 32, p. 753 the text says of the transferred prisoner: "He is more than the insane ward of the state; the state is in possession of him under its police powers," under the effective judgment of the trial court. See also 44 C. J. S., Insane Persons, sec. 131. In 50 C. J. 367 it is stated that an action may not be maintained against a prisoner to recover for

his maintenance, although the prisoner requested the furnishing of food, since it was the duty of the prison authorities to furnish maintenance. Citing Washburn v. Belknap, 3 Conn. 502.

We find one case which is directly in point, and wherein it appears that the statutes (Wisconsin) provided for transfer of an insane convict to a State hospital, and provided, generally, for the subjection of a hospital patient's estate to maintenance payment. The Board in that case, State Board of Control v. Gardner's Estate, 220 Wis. 490, 264 N. W. 647, 648, undertook to, and did in the court of first instance, subject the ward's estate to payment of a claim of more than $3,000. The Supreme Court reversed, and directed dismissal of the petition asserting the claim. The court referred to the fact that the inmate had been convicted of a felony, and upon becoming insane transferred to Central Hospital, and said, "If he was there confined pursuant to such sentence, there can be no recovery." The court referred to the statutes similar to ours, which fix the status of a prisoner. KRS 202.380, which requires a return to the prison upon mental restoration, and provides that "the time a prisoner spends in a state hospital * * * shall be counted as a part of his prison sentence." The Wisconsin court reasoned that during the time the prisoner was in the hospital, he was serving his sentence the same as if he were actually in the prison, and found, as may be held here, the hospital to be a "mere adjunct to or department of the state prison" where persons are confined when found to be insane; the judgment of conviction is therefore "the source of authority" for holding the prisoner.

Under the old common law felons were without civil rights; they were conceived to be civilly dead. This harsh rule has been relaxed or abandoned, save as to the right to compel them to labor. Now they may own, inherit and transmit property, sue and be sued, and have most of the rights accorded other persons. State Board of Charities, etc. v. Hays, 190 Ky. 147, 227 S. W. 282.

We believe the Wisconsin case is sound in reasoning and principle, and that under the statutes fixing the status of the prisoner, and giving effect to the consti-

tutional provision, and KRS 197.020, we conclude that the chancellor properly sustained the demurrer and dismissed the petition.

Judgment affirmed.