John Earl BELDEN, Appellant

v.

CABINET FOR FAMILIES AND CHIL-
DREN, n/k/a Cabinet for Health and
Family Services, Appellee

NO. 2014-CA-001177-MR

Court of Appeals of Kentucky.

RENDERED: APRIL 15,
2016; 10:00 A.M.

BRIEF FOR APPELLANT: John Earl Belden, Pro se, Eddyville, Kentucky

NO BRIEF FOR APPELLEE

BEFORE: COMBS, J. LAMBERT, AND VANMETER, JUDGES.

*OPINION*

VANMETER, JUDGE:

An adult adopted person may file a motion with the circuit court for inspection of his adoption records. Upon the filing of such motion, the Cabinet is required to undertake a search for the biological parents to ascertain whether they consent to the inspection. If the biological parents are deceased, the court may order the inspection. The issue we must resolve is whether the Jefferson Circuit Court erred in denying inspection. Because the trial court issued no findings of fact in denying inspection in this case, we must vacate its order and remand to that court for findings of fact and conclusions of law that will permit a meaningful appellate review.

## I. Factual and Procedural Background.

John Belden is currently incarcerated at the Kentucky State Penitentiary, Eddyville. He is serving a sentence for second-degree assault under extreme emotional disturbance and first-degree wanton endangerment. The factual circumstances of the incident that led to his incarceration are set forth in *Belden v. Commonwealth*, No. 2011–SC–000699–MR, 2013 WL 3155839 (Ky., June 20, 2013). Belden was also convicted of first-degree manslaughter, but the Kentucky Supreme Court vacated that conviction and remanded to the Jefferson Circuit Court for a new trial. The record does not indicate any disposition of that charge since remand.

In 2013, Belden filed a Petition to Inspect Adoption Records pursuant to KRS[1] 199.570 and 199.572. In May 2014, the Jefferson Circuit Court entered an order finding that "the Cabinet for Families and Children ... has determined that the biological parents listed on the original birth certificate ... are deceased."[2] The trial court accordingly ordered "that the biological parents are deceased or cannot be located and your petition to inspect your adoption records is denied."[3] Belden filed a timely motion for reconsideration, citing his status as a prisoner, his adoptive parents' abandonment and nonsupport, his desire to know the facts of his commitment to the state and his medical history, his knowledge of biological siblings and desire to find them and "to find a loved one and a family to belong and be unconditionally accepted." The trial court denied the motion, stating

---

1. Kentucky Revised Statutes.

2. The record indicates that the Cabinet located a death certificate for the biological mother, but that Belden's original birth certificate did not name a biological father.

3. The trial court's order was entered by means of Form AOC 290.2, titled "Order Granting or Denying Request to Inspect Adoption Records."

After reviewing the adoption records and considering that the biological mother listed on the birth certificate is deceased, the Court determined that the petition to inspect the adoption records should be denied. The Court has reconsidered this decision in the capacity of this case and KRS 199.570 and has determined that the motion was properly denied.

This appeal follows.

## II. Standard of Review.

The operative statute permitting an adult adoptive child to inspect his or her birth records is KRS 199.572. In pertinent part, it provides,

(7) If after diligent and reasonable effort, the secretary of the cabinet certifies that both biological parents identified in the original birth certificate are deceased or the secretary is unable to locate said parents, then a judge of the Circuit Court, upon motion of the adult adopted person, *may* order that all papers and records of the Cabinet for Health and Family Services and those of the Circuit Court pertaining to the adoption shall be open for inspection to the adult adopted person. In any case, the court shall order that only identifying information about the biological parents be shared with the adult adopted person.

(emphasis added). Kentucky case and statutory law recognizes that "may" denotes a permissive action. KRS 446.010(26); *see Alexander v. S & M Motors, Inc.*, 28 S.W.3d 303, 305 (Ky.2000) (stating that "[w]hen considering the construction of statutes, KRS 446.010[ ] provides that 'may' is permissive, and 'shall' is mandatory[ ]"). Because the applicable statute uses the permissive word, "may," our applicable standard of review is whether the trial court abused its discretion in denying inspection of the records. "Hav-

ing determined that the trial court had … discretion …, [the appellate c]ourt must now determine whether that discretion was abused in this case. 'The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *C.D.G. v. N.J.S.*, 469 S.W.3d 413, 421 (Ky.2015) (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999)).

## III. Analysis.

### A. *Inspection of Adoption Records.*

Belden argues that the trial court erred in denying his request for inspection, apparently on the basis that KRS 199.572(7) directs that his adoption records be open if his biological parents are either deceased or cannot be located. We do not read the statute so broadly due to the use of the permissive word, "may." A reading of the entire statute, KRS 199.572, discloses that it represents legislative accommodation of the sometimes competing rights of adoptees for information relative to their adoptions and their biological "roots" with the basic privacy rights of the parties to an adoption, including, as here, biological parents. *See, e.g., Fineberg v. Suffolk Div. of Prob. & Family Court Dep't*, 38 Mass.App. Ct. 907, 907, 644 N.E.2d 264, 265 (1995) (interpreting purpose of Massachusetts adoption disclosure statute). The fact that the biological parents are deceased, or unable to be located, does not necessarily obviate the privacy rights of other persons, such as biological grandparents, siblings or other family members. That said, however, the statute sets forth no standards for a trial court to follow in exercising its discretion to grant or deny access. As a result, a trial judge with a predisposition to open adoption records will grant; a trial judge with a predisposition to secrecy will deny. Such result based merely on the personal preference of a trial court is un-

doubtedly arbitrary and cannot be the law of the Commonwealth of Kentucky. *See* Ky. Const. § 2 (stating "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority[ ]").

Our review of adoption law in Kentucky discloses that the legislature's decision as to how much openness or confidentiality to afford adoption proceedings represents a public policy determination which has fluctuated over time. For example, until 1940, adoption proceedings were openly filed in circuit court and no provision of state law mandated confidentiality.[4] In 1940, the legislature repealed the existing statutes relating to adoption, Ky. Stat. §§ 2071, 2072, 2072a, and 2072b, and enacted a more comprehensive adoption statute. 1940 Ky. Acts, ch. 94. For the first time, the legislature provided that "[t]he files and records of the court in adoption proceedings shall not be open to inspection or copy by any person ... except upon order of the court expressly permitting inspection or copy." *Id.,* § 8. In some form or fashion, that is essentially the version of the confidentiality provision that currently exists. Certainly, the legislature may decide to provide for more openness as to adoption records, as is the case in other states. *See, e.g.,* Kan. Stat. Ann. § 65–2423 (Westlaw 2016) (adopted person of legal age may request original certificate of birth); Or.Rev.Stat. Ann. § 432.228 (Westlaw 2016) (permitting adopted person, age 21 years or older, to received certified copy of original birth certificate); Tenn.Code Ann. § 36–1–127 (Westlaw 2016) (generally making adoption records open).[5]

This case's decision is governed squarely by KRS 199.572. But other statutes bear on its outcome, principally by indicating the degree of confidentiality which the legislature intends to govern adoption proceedings. KRS 213.071(4) requires the State Registrar, upon receiving a report of adoption, to issue a new birth certificate, to "be substituted for the original certificate of birth in the files, and the original certificate of birth and the evidence of adoption ... shall not be subject to inspection except upon order of a court of compe-

---

4. Adoption was not recognized at common law and prior to 1860, Kentucky had no general law respecting adoption. *Power v. Hafley,* 85 Ky. 671, 672–73, 4 S.W. 683, 684 (1887). As noted in *Power,* a special act of the legislature was required to effectuate an adoption. Clearly, no aspect of the process was confidential or secret. A general statute for adoption was first enacted in 1860. 1860 Ky. Acts, ch. 741. The act's stated purpose was "to authorize Circuit and Equity and Criminal Courts to make persons entitled to inherit as heirs-at-law." *Id.* The law required any person wishing to adopt "any infant or adult person" to file a petition in the circuit or equity and criminal court of the petitioner's county of residence. *Id.* § 1. Two years later, the legislature added a provision to permit the petitioner to exercise parental control of infant adopted persons. *Myers' Supplement,* pp. 258–59. In 1873, these provisions were codified as Ky. Gen'l Stat. ch. 31, §§ 17–

18. Following the 1891 revision of the Kentucky Constitution, these sections were recodified as Ky. Stat. §§ 2071–72. Throughout this period, no confidentiality or secrecy attached to the adoption process.

5. As noted by a number of authors, the legislature's policy position as to the openness or confidentiality of adoption records may be any one of number of possible choices, from complete openness to complete secrecy. *See generally,* Christopher G.A. Loriot, *Good Cause is Bad News: How the Good Cause Standard for Records Access Impacts Adult Adoptees Seeking Personal Information and a Proposal for Reform,* 11 U. Mass. Law Rev. 100, 109–12 (2016); Elizabeth J. Samuels, *The Idea of Adoption: An Inquiry into the History of Adult Adoptee Access to Birth Records,* 53 Rutgers L. Rev 367 (2001).

tent jurisdiction."[6]

KRS 625.108, relating to confidentiality and sealing of files and records in involuntary termination of parental rights, states:

(2) The files and records of the Circuit Court, excluding the name or other identifying information of a prospective adoptive parent, during proceedings for involuntary termination of parental rights shall not be open to inspection by persons other than parties to such proceedings, their attorneys, and representatives of the cabinet except under order of the court expressly permitting inspection. Upon the entry of the final order in the case, the clerk shall place all papers and records in the case in a suitable envelope which shall be sealed and shall not be open for inspection by any person other than representatives of the cabinet without a written order of the court or as authorized by the provisions of KRS Chapter 199.

Since KRS 199.572(7) has not been the subject of any reported or unreported appeal,[7] and provides little to no guidance to trial courts as to the proper exercise of their discretion in situations in which the biological parents are either dead or cannot be located, we look to the case law of other states which have addressed the issue. In *In re Roger B.*, 84 Ill.2d 323, 326–27, 49 Ill.Dec. 731, 418 N.E.2d 751, 752–53 (1981), the Illinois Supreme Court affirmed a lower court determination imposing a good-cause standard for inspection. The court noted that while the statute did not explicitly provide a good-cause standard, "the legislature [had] given the court authority to issue an order providing access to the records. . . . [T]he discretion conferred by the statute was intended to be exercised upon a showing of good cause." *Id.* The Missouri Supreme Court similarly held, in interpreting that state's law which permitted opening by court order, that a "court on good cause shown may release such portions of an adoption proceeding record as it deems necessary to satisfy the needs of the applicant when measured against the rights of the natural parents, the adoptive parents and the societal need to protect and maintain a viable system for adoption." *Application of Maples*, 563 S.W.2d 760, 765 (Mo.1978). That court further noted that "[t]he closing of such records by statute, manifests a legislative intent that any opening or disclosure be with caution. The burden is applicant's to show good cause." *Id.* at 765–66.

▉ We hold that a trial court's decision to open adoption records under KRS 199.572(7) should be made when the petitioner shows good cause to inspect. Based on our review of statutes generally mandating confidentiality, the petitioner bears

6. Furthermore, KRS 213.071(3) provides that, in the case of adoption,

[i]f the adopted child is under eighteen (18) years of age, the birth certificate shall not contain any information revealing the child is adopted and shall show the adoptive parent or parents as the natural parent or parents of the child. The new birth certificate, when issued, shall not contain the place of birth, hospital, or name of the doctor or midwife. This information shall be given only by an order of the court in which the child was adopted. If the child was born in the Commonwealth, the new birth certificate shall show the residence of the adoptive parents as the birthplace of the child, and this shall be deemed for all legal purposes to be the birthplace of the child.

7. In *Newsom v. Newsom*, 786 S.W.2d 878 (Ky.App.1990), this court addressed whether the trial court had abused its discretion in denying petitioner's request to inspect adoption records a second time, after having been granted access previously. That issue seems to involve a different consideration from whether to grant access at all.

the burden to show good cause.[8] In making its determination as to whether good cause exists to order inspection, the trial court must consider the interests of the adoptee, but must also give due consideration to the interests of the adoptive and birth parents. Factors to be considered in determining whether good cause exists include, but are not limited to:

1. The reason the information is sought;

2. The existence of means available to obtain the desired information without disclosing the identity of the birth parents;

3. The desires, to the extent known, of the adoptee, the adoptive parents, and the birth parents;

4. The age, maturity, judgment, and expressed needs of the adoptee; and

5. The recommendation of the Cabinet, licensed child-placing agency, or other professional, concerning the advisability of disclosure.

█ In this case, and as noted above, Belden has stated his reasons for seeking access to his adoption records: his status as a prisoner, his adoptive parents' abandonment and nonsupport, his desire to know the facts of his commitment to the state and his medical history, his knowledge of biological siblings and desire to find them in order "to find a loved one and a family to belong and be unconditionally accepted." While we are vacating and remanding this case to the trial court to make appropriate findings of fact and con-

clusions of law, we note a few items which may impact that determination

As to Belden's status as a prisoner, and while he stands duly convicted and apparently has a manslaughter charge pending, he is not without rights. In *Dep't of Welfare v. Brock,* 306 Ky. 243, 247, 206 S.W.2d 915, 917 (1947), the court noted "[u]nder the old common law felons were without civil rights; they were conceived to be civilly dead. This harsh rule has been relaxed or abandoned, save as to the right to compel them to labor. Now they may own, inherit and transmit property, sue and be sued, and have most of the rights accorded other persons." (citation omitted). *See also Smith v. Smith,* 869 S.W.2d 55, 56 (Ky.App.1994) (prisoner entitled to visitation with child "unless there has been a finding that visitation will seriously endanger the child. KRS 403.320(1)[ ]"). The fact, therefore, that Belden is incarcerated, in and of itself, cannot play a part in the trial court's decision.

As to medical history which may be important, that information, to the extent the Cabinet has knowledge of it, is already required to be provided. KRS 199.525 governs dissemination of post-adoption information about medical or genetic condition affecting an adopted person. This statute states:

(1) If the cabinet receives written information from the biological parent or adult biological sibling of an adopted person or a provider of medical services concerning a physician-verified medical or genetic condition which has affected

---

**8.** The good cause standard has its critics. *See* Loriot and Samuels, *supra,* n. 5. But unless and until the legislature amends KRS 199.572, we are compelled to give effect to what we deem to be the legislative policy regarding confidentiality as set forth in KRS Chapter 199 and Chapter 625. *See Commonwealth, ex rel. Cowan v. Wilkinson,* 828 S.W.2d 610, 614 (Ky.1992) *overruled on other* *grounds by Commonwealth, ex rel. Conway v. Thompson,* 300 S.W.3d 152 (Ky.2009) (holding that the legislature alone establishes public policy and that "it is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest[ ]").

or may affect the physical or mental health of genetically-related persons, the cabinet shall make a diligent effort to notify the adoptive parent if the adopted person is a minor, the adult adopted person, or the adult adoptable person in order to transmit the health information. For the purposes of this section, "adoptable person" means a person for whom the court has terminated the parental rights of both biological parents but who has not been adopted.

(2) The cabinet shall submit the health information to the clerk of the Circuit Court which issued the adoption order, and the clerk shall place the health information in the adoption case file.

(3) If a child-placing agency or the court receives health information, it shall notify and transmit the information to the cabinet.

Medical information in the adoption case file can and should be provided to Belden under KRS 199.525. This basis for a claim for disclosure should be given appropriate weight in the determination. For example, if the record indicates that the biological family or family member had a predisposition to substance abuse, that information can be disclosed without necessarily disclosing identity. On the other hand, other medical or genetic conditions may indicate a need for biologically-related persons to have contact.

Finally, as to Belden's stated desire to possibly reconnect with any biological siblings, Belden's remedy is provided in KRS 199.575. This statute sets forth a procedure whereby an adopted person may seek to locate preadoptive siblings:

In situations where a preadoptive brother or sister relationship existed, and one (1) or more of these siblings was then adopted, the following procedures shall be followed on an inquiry by one (1) or more of the siblings to the Cabinet for Health and Family Services seeking information about his brother or sister:

(1) In all cases, an adopted person eighteen (18) years of age or older or a preadoptive sibling eighteen (18) years of age or older of an adopted person may file information concerning himself, his present location, and his known antecedents with the Cabinet for Health and Family Services, stating his interest in being reunited with his preadoptive siblings and authorizing the cabinet to release such information to his preadoptive siblings who may make similar inquiry.

(2) In any case in which a person eighteen (18) years of age or older requests information about or expresses a desire in being reunited with a preadoptive sibling, the cabinet shall first determine whether such sibling has made similar inquiry pursuant to subsection (1) of this section. If the sibling has previously authorized release of information about himself, the cabinet shall release the information to the sibling making inquiry.

This statute balances the interest of the adult adopted child seeking to find his or her siblings with the interest of those siblings and/or their adoptive families. Our view is that Belden's desire to find any preadoptive siblings is governed by KRS 199.575, and not by 199.572, and therefore the trial court should give that factor little to no consideration.

The trial court's Order denying reconsideration in this case made no factual finding, other than a general "having reviewed the file, having considered circumstances[.]" We are, thus, unclear as to whether the decision was based on Belden's status as a prisoner, or some other reason appearing in the record. We are compelled therefore to vacate the trial court's order and direct it to make a factu-

al determination to whether Belden has made a showing of good cause such that disclosure should be made.

B. *Trial Judge's Recusal/Disqualification.*

[6] Finally, Belden argues that the trial judge should have recused or disqualified herself from this case, since Belden had filed a complaint with the Kentucky Judicial Conduct Commission ("JCC"). Belden claims he filed his complaint with the JCC sometime in May 2014, as acknowledged by the JCC's correspondence dated May 27, 2014. He states that the timing of his complaint and the JCC's action indicates the trial judge would have been aware of his complaint while she was issuing her decision on his motion for reconsideration. The JCC ultimately took no action on Belden's complaint, as reflected in its letter to Belden dated July 15, 2014. Belden's argument fails for the simple reason that filings with the JCC are confidential, and the judge is not notified unless the JCC determines it needs further information to investigate the complaint or requests the judge to appear for

9. Kentucky Rules of the Supreme Court.

an informal conference. See SCR [9] 4.130, 4.170. Nothing in the record indicates that Belden's complaint with the JCC was anywhere near the point of being disclosed to the trial judge. Furthermore, if Belden had wanted the trial judge to recuse, his obligation was to file a motion for her recusal. Having failed to file such a motion, this issue is not preserved for our review. *Kenney v. Hanger Prosthetics & Orthotics, Inc.,* 269 S.W.3d 866, 876 (Ky. App.2007).

## IV. CONCLUSION

As previously stated, we vacate the Jefferson Circuit Court's Order denying Belden's motion for inspection, and remand to that court for further proceedings consistent with this Opinion.

ALL CONCUR.