# Griffith, &c., v. Speaks, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.   REVERSED.

ANIMALS—AGISTER'S LIEN—MOTION ON BOND EXECUTED TO DISCHARGE LIEN.

Held:   1. Under Civil Code Practice, section 654, providing that, in a motion for judgment on a bond executed to discharge a distress warrant, defendants may make defense on the ground "that the distress was for rent not due in whole or in part, or was otherwise illegal," which provision is by Kentucky Statutes, section 2502, made applicable to a motion on a bond executed to discharge an agister's lien, the defendants are not limited to the defense that the debt had not matured, but may controvert the validity of all or any part of the claim, or make defense by way of set-off or counterclaim.

2. Under Kentucky Statutes, section 2500, giving the keeper of a livery stable a lien upon cattle placed in his stable for reasonable charges for keeping and caring for them, and Id., section 2501, providing that this lien shall not continue longer than ten days after the removal of the cattle, defendants having placed several horses in plaintiff's stable at the same time, under a contract to pay for their keep, plaintiffs have a lien on a part of the horses which still remain in their possession for the keep of others removed more than ten days before the suing out of the warrant.

McMILLAN & TALBOTT, FOR APPELLANTS.

On June 26, 1899, Speaks & Redmon, livery stablemen in Paris, Ky., caused a distress warrant (should be agister's warrant) to be issued against certain horses of appellant, Griffith, for $325.80, with interest and costs, under section 2502, Kentucky Statutes.

Griffith and wife, with J. D. McClintock as surety, executed bond as provided by section 653 Civil Code, conditioned as required thereby. Thereupon appellees, Speaks & Redmon, pursuant to section 654 Civil Code, notified the appellants, Griffith, &c., that they would, on Saturday, July 1, 1899, being the 18th day of the June term, 1899, of the Bourbon circuit court, move the judge of said court for a judgment on said bond, to which appellants appeared and filed written objections and answer to which a demurrer was filed and sustained, and the questions to be decided on this appeal are whether paragraphs 2, 3 and 4, or any one of them, present a good defense to the claim sued on or any part thereof.

### POINTS.

1. The Civil Code permits the defendant to show that he did not owe the plaintiff or landlord the amounts claimed in the warrant.

2. The defendant or tenant may litigate the amount of the claim asserted in whole or in part.

3. Under the Kentucky Statutes, an agister's warrant can not be issued unless there is a lien upon which to base it.

4. A lien for keeping or feeding an animal continues only for ten days from the time of its removal from the possession of the plaintiff with his consent.

### AUTHORITIES CITED.

Ky. Stats., secs. 2500, 2501, 2502; Civil Code, 650, 654; Dean v. Ball, 3 Bush, 502.

ROGERS & MOORE, ATTORNEYS FOR APPELLEES.

Demurrer to answer should be sustained. Section 654, Civil Code, sets out the only defense that can be made to a motion for a judgment on a bond executed to discharge the levy of a distress warrant: "The defendants may make defense upon the ground that the distress was for rent not due in whole or in part, or was otherwise illegal, or if property was levied on, that it was by statute exempt from the levy, and may make defense by way of set-off or counterclaim that is allowed by law."

The defences made by appellants do not contain any of the grounds set out in the above section.

After appellants executed the bond, they were estopped to deny their tenancy. Pegard v. Keller, 4 Met., 260; Allen v. Thompson, 6 Ky. Law Rep., 360; Civil Code, sec. 654.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

On the 20th day of June, 1899, Speaks & Redmon, the proprietors of a livery stable, sued out an agister's' warrant for $325.80 alleged to be due them for the keep of certain horses belonging to appellant, W. B. Griffith, under section 2501 of the Kentucky Statutes.     The warrant was levied by the sheriff upon a sorrel mare appraised at $150, a brown horse appraised at $45, a bay horse at $85, and a bay mare at $50, amounting in the aggregate to $330.     On the 22d of June, Griffith executed bond, as provided by section 653 of the Civil Code of Practice     Thereupon appellees, pursuant to section 654 of the Civil Code of Practice moved for judgment upon the bond.     Thereupon appellants filed their answer and resisted judgment upon the ground that they were not indebted to the appellees for the amount claimed.  A general demurrer was sustained to each of the four paragraphs of the answer, and, appellants declining to plead further, judgment was entered against them for $325.-80, with ten per cent. damages thereon, and six per cent. interest per annum on this sum until paid, and for costs, to which judgment defendants objected and prosecute their appeal to this court.

Their answer is as follows:

"Paragraph 1.  Defendants state that the notice herein is in law insufficient, and they demur generally to this proceeding on the ground of legal insufficiency of the notice.

"Par. 2. Not waiving their objection and demurrer set out in paragraph 1, the defendants, W. B. Griffith, etc., state that the distress warrant or agister's warrant herein was issued for more rent or feed bill than was due the plaintiffs, and that said distress warrant was and is therefore illegal. Defendants state that plaintiffs have included in the alleged feed bill $116 for board and keep for the sorrel mare, Snip, when the defendants were not indebted to plaintiffs in said sum for board and keep of said mare, or in any sum whatever. Defendants state that said sorrel mare, Snip, was delivered to plaintiffs under the following agreement: Defendants were willing to sell said mare in her undeveloped condition for $200, plaintiffs agreeing to take said mare and to be at all expense of keeping, handling, developing, and selling said mare in consideration of whatever excess over $200 for which plaintiffs could sell said mare, the time for sale and price which plaintiffs should ask and receive for said mare to be left to plaintiffs; and said mare was delivered to plaintiffs under said agreement during all the time plaintiffs had possession of her, and she was in plaintiffs' possession at the time they had this distress warrant issued against said mare, wrongfully asserting an alleged board bill against said mare to the amount of $116; and defendants state that by virtue of said agreement defendants were not indebted to plaintiffs in any sum whatever for said mare at the time this distress warrant or agister's warrant was issued, and to the extent of $116 aforesaid the said warrant was for money not due plaintiffs, and said warrant was and is illegal and void. Defendants further state that plaintiffs have included in the alleged feed bill $40.80 board bill for a horse, when defendants were not indebted to plaintiffs in said sum

for board or keep of said horse, or in any sum whatever. Defendants state that said horse was delivered to plaintiffs under the following agreement: Defendants were willing to sell said horse in his undeveloped condition for $100, plaintiffs agreeing to take said horse and to be at all the expense of keeping, handling, developing, and selling said horse in consideration of whatever excess over $100 for which plaintiffs could sell said horse, the time of sale and price which plaintiffs should ask and receive for said horse to be left to plaintiffs; and said horse was delivered to plaintiffs and kept by plaintiffs under said agreement during all the time plaintiffs had possession of him. Defendants state that plaintiffs were unable to sell said horse for any excess over $100, or for $100, and that in December, 1898, plaintiffs sold said horse for $75, and deliverd possession thereof to the purchaser, and neither plaintiffs nor defendants have had possession of said horse since that time. Defendants state that by virtue of said agreement defendants were not indebted to plaintiffs in any sum whatever on account of said horse at the time this warrant was issued, and to the extent of $40.80 said warrant was for money not due plaintiffs, and by reason thereof was illegal and void.

"Par. 3. Defendants state that $40.80 of the amount for which the warrant was issued was an alleged board bill claimed by plaintiffs for keeping and feeding a horse for defendants prior to December 5, 1898; that on December 5, 1898, plaintiffs sold said horse for defendants, and that said horse has not since been in the possession of plaintiffs or defendants, and has not since been owned by the defendants or any of them. Defendants state that said horse was removed from the custody of plaintiffs with the consent of defendants by the purchaser

thereof on December 5, 1898. Defendants state that plaintiffs, by their affidavit for issuing an agister's warrant herein, asserted an alleged lien upon four horses of defendants, and that the writ issued upon the basis of said affidavit was directed against and ordered the sheriff to levy upon said four horses, and that said four horses were and are other and different horses than the horse so sold on December 5, 1898, by plaintiffs, upon which said alleged board bill is claimed to have accrued, and that the plaintiffs did not attempt to assert said alleged claim for board against said horse so sold, and did not refer to or mention said horse in said affidavit or writ, but proceeded against the said other four horses as though said alleged board bill had accrued upon them; and defendants say that by reason of the facts herein stated no warrant could be issued for said alleged board bill at the time said warrant was attempted to be issued, nor could said alleged claim be asserted as against other stock than the horse upon which said board bill is claimed to have accrued; and defendants say that by reason of the facts herein stated said warrant was illegal and void.

"Par. 4. Defendants state that as to the remaining horses boarded by plaintiffs, for which defendants were to pay plaintiffs board, plaintiffs and defendants agreed in advance that said board should be ten dollars per month, and defendants state that said warrant included board on said horses at the rate of twelve dollars per month; that the debt asserted by plaintiffs herein included thirteen months' board at twelve dollars per month, when under said agreement it should be thirteen months' board at ten dollars per month, resulting in an excess of twenty-six dollars; and that said distress warrant was issued for and includes such excess, and is for

board not due to that extent, and is therefore null and void.

"Wherefore they pray to be hence dismissed, with judgment for their costs and for all proper relief."

Section 654 of the Civil Code of Practice provides: "The party to whom the bond is executed may move the justice of the peace or the court for a judgment thereon against all or any of the obligors, or their representatives, having given to them five days' notice of the motion. The defendants may make defense upon the ground that the distress was for rent not due in whole or in part, or was otherwise illegal, or if the property was levied upon, that it was by the statute exempt from the levy, and may make any defense by way of set-off or counterclaim that is allowed by the Code in actions."

It is contended by counsel for appellee that, after appellants executed the bond under section 653 of the Civil Code of Practice, they were limited by section 654 to the grounds of defense that the debt for which the agister's warrant was sued out had not matured or become due, or that it was levied upon exempt property; that the word "due" in section 654 referred only to the maturity of the rent. We can not believe that the Legislature intended to put any such restricted meaning upon the word as used in this section of the Code. The word "due," in its ordinary sense, means "that which is justly owed; that which law or justice required to be paid or done." If appellants' contention as to the meaning of the section is correct, we would have this result: If A. owed B. $500 for rent maturing on the 1st day of April, and B. should cause a distress warrant to issue on the 31st of March, then A. could defend, because it lacked one day of maturing; but if B. on the 2d of April should

cause a distress warrant to be issued for $1,000, instead of the real sum due, $500, and A. should give bond and discharge the levy, then he could not make defense, because the debt, without refernce to its amount or validity, had became due. In our opinion, the discharge of the agister's lien by the execution of a bond under section 654 did not take away from appellant any defense which he might have asserted against the debt for which the warrant was sued out. The bond simply takes the place of the property which had been levied upon, and the defendant had the right to controvert the validity of all or any part of the sum claimed by appellee, or to make defense thereto by way of set-off or counterclaim. Dean v. Ball, Bronston v. Ball, 66 Ky., 502. The cases of Pegard v. Keller, 4 Metc., 260, and Allen v. Thompson, 6 Ky. Law Rep., 360, relied on by appellee, do not conflict with this idea. In those cases it was held that a defendant in a distress warrant who executes the bond authorized by section 652 of the Civil Code of Practice, thereby admits that he was either tenant, assignee, or under tenant, and could not, in a motion for judgment thereon, rely upon a defense which denied that character. Nothing of that sort is attempted here. Appellant does not deny that he placed his horses in appellees' livery stable. He simply controverts the balance alleged to be due by reason of having done so upon the ground that some of the horses were kept under special contracts, and that the price charged for the keep of others is in excess of the contract price.

Section 2500 of the Kentucky Statutes gives the keepers of livery stables a lien upon cattle placed in their stable for reasonable charges for keeping and caring for them, and section 2501 provides a manner of enforcing

this lien, but it expressly says that the lien provided for shall not continue longer than ten days after the removal of the cattle from the livery stable. It follows, therefore, that appellees had no lien upon any horse which had been removed from their stable for more than ten days before the suing out of their warrant. But we are of opinion that, if several head of horses were placed in the stable of appellees by appellants at the same time under a contract to pay for their keep, a lien could be asserted against a part of the horses which still remain in their possession for the keep of others which may have been removed more than ten days before the suing out of the warrant. For reasons indicated, the court erred in sustaining the demurrer to each paragraph of the answer, and the judgment is reversed, and the cause remanded, with instructions to overrule the demurrer, and for other proceedings consistent with this opinion.