# Department of Public Welfare, for Use and Benefit of Central State Hospital et al., v. Allen et al.

(Decided June 22, 1934.)

LEE HAMILTON, J. D. VIA, and WM. J. DEUPREE for appellant.

TRABUE, DOOLAN, HELM & HELM, W. A. ARMSTRONG, and HENRY J. TILFORD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

Benjamin F. Allen, a World War veteran, became mentally incompetent by reason of his service in the Army in the late war, and on March 21, 1927, was adjudged to be of unsound mind and was committed by the Jefferson circuit court to the Central State Hospital at Lakeland, Ky. He remained in that institution continuously from March 21, 1927, until June 30, 1927, when he was released. Later he was committed by the Meade circuit court to the Western State Hospital at Hopkinsville, Ky., where he remained as an inmate from November 22, 1929, until December 7, 1930. These institutions are owned and maintained by the state, and by statute the department of public welfare, successor of the state board of charities and corrections, has general supervision over them. By an order of the Jefferson circuit court, entered on February 24, 1930, the Kentucky Title and Trust Company of Louisville, Ky., was appointed committee for Allen.

The department of public welfare, suing for the use and benefit of the Central State Hospital and the Western State Hospital, brought this action against Benj. F. Allen and his committee to recover the sum of $1,205, the amount alleged to be due for his care, board, and

maintenance while he was an inmate of these state institutions. The action is authorized by section 216aa-37 of the Kentucky Statutes, which reads:

"Where the patients have been, or may be, supported in any of the institutions embraced in the provisions of this act have, or shall acquire estates which can be subject to debt, they shall be liable for their board and maintenance, and the board of charities and corrections is authorized and directed in every such case to sue for in name of such institution and recover the amount of such patient's board at the rate fixed by the board or so much thereof as such estate will suffice to pay for the time they shall have been respectively kept and maintained therein and not otherwise paid for, and by proper proceedings to subject their estates, respectively, to payment thereof; and when the husband, wife or parent of any such patient, who has been or may be supported in any of said institutions, shall have an estate sufficient for the support of such patient in addition to the support of any other who may be dependent on such husband, wife or parent, in like manner to sue for and recover from such husband the amount of his wife's board, or from such wife the amount of her husband's board, and from such parent the amount of his or her child's board at the rate aforesaid, for the time they shall have been supported by such institution."
Section 216aa-38 provides that:

"The board may fix the rate to be paid for the support of a person by his committee or by relatives liable for such support, or by those not liable for such support, but willing to assume the cost thereof; but such rates shall be sufficient when possible to cover a proper proportion of the cost of maintenance and of necessary repairs and improvements, and the same rate shall be charged to all persons."

On November 28, 1923, the state board of charities and corrections fixed the rate to be paid for the support of a person by his committee, or by relatives liable for such support, at $360 per annum.

The petition alleged that, since his discharge from the Army, Allen had been drawing compensation from the United States government, and his committee then

had in its hands personal property belonging to him, the character and kind of which was unknown to the plaintiff, and that it, as his committee, had on deposit in the Kentucky Title & Trust Company a sum of money, the exact amount of which it could not state, and it asked that the committee be required to disclose the kind and amount of property in its hands belonging to Allen.

The committee filed an answer in which it averred that the property in its hands as the committee for Allen was money, or property purchased with money, which had been paid to it or Allen by the United States government as compensation under the World War Veterans' Act, U. S. C. title 38, sec. 471, et seq. (38 USCA sec. 471 et seq.), and that by the provisions of that act such funds and property were not subject to debts or the claims of creditors.

The case was submitted on the pleadings, and the chancellor adjudged that the property in the hands of the committee was not an estate which could be subject to debt under section 216aa-37 Ky. Statutes, and the petition was dismissed.

The question presented by this appeal is whether moneys or property purchased by the committee of a veteran with moneys received from the United States for the use of the disabled ward are subject to the claims of the ward's creditors.

Section 22 of the World War Veterans' Act (38 USCA sec. 454) reads:

"The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable."

Act of June 7, 1924, c. 320, sec. 22; U. S. C. title 38, sec. 454 (38 USCA sec. 454).

The exact question presented for decision is one of first impression in this court, and we fail to find where it has been considered by the Supreme Court of the United States but analogous cases involving the construction of section 22 of the World War Veterans' Act have been passed upon by this court and other courts, including the Supreme Court of the United States, and these decisions are helpful in reaching a correct solution of the problem before us. In First National Bank of Horse Cave v. Cann's Ex'x, 247 Ky. 618, 57 S. W. (2d) 461, it was held that insurance money paid to a dead soldier's estate by the United States was not exempt from the claims of the soldier's creditors. In Smith v. Spicer's Guardian and Committee, 244 Ky. 68, 50 S. W. (2d) 64, the committee for an incompetent veteran had on deposit in a bank which became insolvent money which had been paid to him by the United States as compensation and war risk insurance due his ward, and his claim of preference over the other creditors of the bank was disallowed on the ground that the title had passed from the United States. The Supreme Court of the United States granted a writ of certiorari because there was a conflict in the decisions of the state courts upon the question and affirmed the judgment of this court. Spicer v. Smith, 288 U. S. 430, 53 S. Ct. 415, 417, 77 L. Ed. 875, 84 A. L. R. 1525. Appellees rely on certain language found in that opinion in support of their claim that the exemption provisions of section 22 of the World War Veterans' Act apply to funds after they have passed into the hands of the beneficiary. That language is as follows:

"The provisions for exemption, nonassignability, and suspension of payments plainly imply the passage of title from the United States to the veteran."

The foregoing excerpt from the opinion in Spicer v. Smith clearly implies the contrary. Certainly the provision that payments under the act shall not be assignable refers only to funds which have not yet reached the hands of the beneficiary, and it has been so decided. Bostrom v. Bostrom, 60 N. D. 792, 236 N. W. 732.

In the recently decided case of Trotter v. Tennessee, 290 U. S. 356, 54 S. Ct. 138, 139, 78 L. Ed. —, it was held that lands purchased by the guardian of a veteran with moneys received from the United States

for the use of the disabled ward were subject to taxation, and that there was an end to the exemption when the payments were converted into lands and buildings. Decisions to the contrary were disapproved, including Rucker v. Merck, 172 Ga. 793, 159 S. E. 501, City of Atlanta v. Stokes, 175 Ga. 201, 165 S. E. 270, and Payne v. Jordan, 36 Ga. App. 787, 138 S. E. 262, which are relied on by the appellees. Some of the cases holding that the exemption continues after the money comes into the possession of the beneficiary are based on local statutes which go further in this respect than the federal statute. In re Ferarazza's Estate (Cal. Sup.) 28 P. (2d) 670, is an example of this class of cases.

The question as to whether the exemption remained in force while the moneys continued in the hands of the soldier, or his guardian, or on deposit in bank, was left open in the opinion in the Trotter Case, but we see no escape from the conclusion that Congress intended only to provide protection until the funds came into the hands of the beneficiary. A contrary construction would do violence to the plain language of the statute. If it had been the intention of Congress to exempt such funds from all taxation and protect them from the claims of creditors after they have come into the hands of the beneficiary and have become his absolute property, it could easily have employed appropriate language to accomplish that end. The word "payable" in section 22 of the act refers to each of the three subsequent clauses, and must be given the same meaning in each instance. It was evidently the purpose of Congress that the funds should actually reach the hands of the beneficiary or his guardian.

In State ex rel Smith v. Board of County Com'rs of Shawnee County, 132 Kan. 233, 294 P. 915, 919, the Supreme Court of Kansas held that securities purchased by a guardian for his ward with money paid by the United States as compensation and insurance were not exempt from taxation by the state, and, after quoting from a number of opinions construing a section of the Civil War Pension Act (section 4747, United States Revised Statutes, 38 U. S. C. sec. 54 [38 USCA

sec. 54]) somewhat similar to section 22 of the Act of 1924, the court said:

"From these opinions it will be readily observed that the construction was reached by giving a meaning and significance to the words in the statute, 'money due or to become due.' These particular words are not used in the World War statute, 38 USCA sec. 454, but the word 'payable' is used apparently to express the same or similar situation. With the very complete meaning of the term 'due or to become due' as expressed in the opinions above cited, we can compare the definitions of the word 'payable' used twice in section 454, the following being some of the generally accepted and well-recognized definitions of that word."

After setting out some of the generally accepted definitions of the word "Payable," the opinion continues:

"The above definitions certainly convey the idea of something that is due, mature, capable of being paid, to be paid, something not yet done. If such is the reasonable, usual, ordinary, and correct meaning of the word 'payable,' it is certainly very much akin to the term in the old law 'due or to become due.' We think this is the reasonable, fair, and intended meaning of the word 'payable,' as used in the new statute. So that the allowance due under titles II, III, and IV, or the allowance to be paid under titles II, III, and IV respectively, shall not be assignable, etc. Again, how could an allowance or compensation that had already been paid be 'assignable?' To give the word 'payable' any other or different meaning from the general equivalent of 'due,' or 'to be paid,' or 'capable of being paid,' would be giving it an unusual and strained construction."

A writ of certiorari was denied by the Supreme Court of the United States, 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462.

In Duzan v. Cantley, 227 Mo. App. 670, 55 S. W. (2d) 711, 712, it was argued that the proceeds of a war risk insurance policy were not subject to the claims of creditors, and in disallowing this claim the court said:

"This contention is on the theory that the purpose and intent of the legislation in behalf of veterans is to protect the money from all claims, except the United States government, not only until it comes into the hands of the beneficiary, but also until the latter has himself spent it. We think this is not the correct construction or interpretation to be placed thereon. In our view, funds thus arising are not thus protected after they have once come into the hands of the beneficiary. They have then become his absolute property, and having once come into his hands are no longer an object of solicitude or care on the part of the government. The latter is careful to protect the fund until the beneficiary receives it, but no further. This seems to be clear from the use and subsequent reiteration of the word 'payable.' So long as a fund is 'payable' to a person it has not yet reached his hands, but when it has, it can no longer be said to be payable to him."

Also see State v. Blair, 165 Tenn. 519, 57 S. W. (2d) 455; Martin v. Guilford County, 201 N. C. 63, 158 S. E. 847, 76 A. L. R. 978; State v. Wright, 224 Ala. 357, 140 So. 584; United States Fidelity & Guaranty Co. v. Montgomery, 226 Ala. 298, 146 So. 528; Arcese v. Com., 160 Va. 116, 168 S. E. 465; Johnson v. Board of Commissioners of Yankton County (S. D.) 249 N. W. 683; Saxe v. Board of Revision of Taxes, 311 Pa. 545, 166 A. 853; Shippee v. Commercial Trust Co., 115 Conn. 313, 161 A. 781; Id., 115 Conn. 326, 161 A. 775; In re Hallbom's Estate, 189 Minn. 383, 249 N. W. 417; affirmed by the Supreme Court in Pagel v. Pagel, 290 U. S. 620, 54 S. Ct. 131, 78 L. Ed. —; In re Cross' Estate, 148 Wash. 422, 269 P. 339.

Our conclusion is that the language "compensation, insurance, and maintenance and support allowance payable" as used in section 22 of the Act of 1924 (38 USCA sec. 454) means funds which the veteran is entitled to receive from the United States under the act and not funds which have come into his possession. The possession of the guardian or committee is regarded, of course, as the possession of the ward. 12 R. C. L. 1123; Trotter v. Tennessee, supra.

It follows that the chancellor erred in refusing to

enter a judgment for the plaintiff and in dismissing the petition. The judgment is reversed for proceedings consistent herewith.