**CAPITOL CADILLAC OLDS, INC.,**
Appellant/Cross–Appellee,

v.

**Gary H. ROBERTS and Angie Roberts,**
Appellees/Cross–Appellants.

**Nos. 89–SC–367–DG, 89–SC–862–DG.**

Supreme Court of Kentucky.

June 6, 1991.

As Modified on Grant of Rehearing
Aug. 29, 1991.

H. Foster Pettit, William B. Owsley, Wyatt, Tarrant & Combs, Lexington, for appellant/cross-appellee.

William P. Sturm, Frankfort, for appellees/cross-appellants.

M. Brooks Senn, M. Thurman Senn, Senn, Miller & Smith, David C. Pottinger, John T. McGarvey, Rebecca A. Clark, Morgan & Pottinger, P.S.C., Louisville, for amicus curiae.

LAMBERT, Justice.

This Court granted the motion of appellant, Capitol Cadillac Olds, Inc. (CCO) for discretionary review and the cross-motion for discretionary review of appellees, Gary H. Roberts and Angie Roberts. A number of issues have been raised with regard to the law of sales as it applies to new automobiles and the law relating to commercial financing and allowable recoveries upon default. We have been favored with *amicus curiae* briefs which argue particular phases of the case.

This saga began in January of 1985 when the Robertses purchased a new Oldsmobile Calais. Shortly after the purchase they discovered that when the car was stopped on a steep incline and the transmission placed in park, a grinding metal on metal sound could be heard. During the ensuing six months, on three separate occasions, the car was returned to CCO for repair of this problem and all such efforts were unsuccessful.

During the time the Robertses were in possession of the car and while it was in the CCO shop for routine maintenance, a light fixture fell on the front of the car and scarred the finish. Thereafter, CCO made five unsuccessful attempts to repaint the car to appellees' satisfaction.

On July 3, 1985, appellees returned the car to CCO, tendered their written revocation of acceptance, and demanded recision of the contract.

The Robertses filed suit against CCO, General Motors, and the bank to which the "with recourse" retail installment contract and security agreement had been assigned. They alleged breach of warranty, revocation of acceptance, and negligence. All defendants answered denying liability and the bank brought a counterclaim against the Robertses and a cross-claim against CCO for the amount of the note. Summary judgment was entered for the bank against CCO for the amount due plus interest at the contract rate and attorneys' fees of $900. No judgment in favor of the bank was entered against the Robertses as CCO paid the bank's judgment.

The trial court granted CCO and General Motors summary judgment on the revocation of acceptance claim and the breach of warranty claim. By amended complaint, the Robertses sought recovery against CCO of the amount they had paid the bank prior to their attempted revocation of acceptance, alleged that the retail installment contract was usurious and alleged that CCO had improperly used the car while it was in its custody by driving it hundreds of miles. A claim was also asserted under the Consumer Protection Act and punitive damages were demanded. General Motors and CCO were granted summary judgment on the amended complaint.

The only issue which went to trial was the Robertses' negligence claim against CCO which arose as a result of the fallen light fixture. When the evidence was heard by the jury, a verdict was returned in favor of the Robertses in the amount of $925 on the claim of negligence in damag-

ing the car and failure to successfully repair the body damage. In the same order, the trial court determined that CCO should recover of the Robertses the amount due on the retail installment contract, the $900 attorney fee it had been required to pay the bank, plus interest at the contract rate on the entire amount until satisfaction of the judgment and its attorney fee of $2,000. The remainder of the Robertses' claims were dismissed and a final judgment entered.

On appeal to the Court of Appeals, the Robertses raised a number of issues and that Court affirmed in part and reversed in part. This Court has carefully reviewed the opinion of the Court of Appeals and determined that it is unnecessary to address each and every issue decided by that Court and raised by the parties on this appeal and cross-appeal. We will limit our decision to those issues which are of substantial public interest or necessary for an appropriate resolution of the controversy. Except as expressly modified herein, the decision of the Court of Appeals is affirmed.

■ The first issue we will review is the Court of Appeals' reversal of the summary judgment in favor of CCO and against appellees on their revocation of acceptance claim. This Court has recently addressed the standard by which motions for summary judgment are to be measured in *Steelvest v. Scansteel,* Ky., 807 S.W.2d 476 (1991), and reaffirmed our previous view that such motions should not be granted unless it appears to be impossible for the party against whom the motion is made to produce evidence at trial which would warrant a judgment in his favor. *Paintsville Hospital v. Rose,* Ky., 683 S.W.2d 255 (1985). When the facts or the reasonable inferences to be drawn from those facts are in dispute, summary judgment is improper and the issue should be tried.

■ Revocation of acceptance is a remedy contained in the Uniform Commercial Code to be utilized when the nonconformity of the goods is substantial and impairs its value to the buyer. KRS 355.2–608. Revocation of acceptance may be predicated upon discovery of a latent defect, as in this case, and must occur within a reasonable time after the purchaser discovered or should have discovered the grounds for it. The statute contains an element of subjectivity by focusing on whether the nonconformity "substantially impairs its value to him."

"However, it is said the test of impaired value is a subjective one which must be evaluated by objective standards. Furthermore, the question of whether a defect substantially impairs the value of an automobile is a question of fact to be determined by a jury." R. Billings, *Handling Automobile Warranty and Repossession Cases,* § 522 (1984).

"The substantial impairment test is subjective in that the needs and circumstances of the buyer must be examined. The buyer's personal belief as to the reduced value of the automobile is not determinative. However, the trier of fact must make an objective determination that the value of the goods to the particular buyer, and not the average buyer, has in fact been substantially impaired." *Id.* at § 5.23.

It is undisputed by the parties that the grinding noise did exist and that the Robertses gave timely notice of their election to revoke their acceptance. The only question is whether the grinding noise which occurred only in unusual circumstances substantially impaired the value of the new automobile to the purchaser of it. While the underlying facts are not seriously disputed, the inferences to be drawn therefrom are disputed matters. CCO contends that the grinding noise was nothing more than an annoyance. The Robertses contend, on the other hand, that it caused them to be apprehensive about their safety while driving the car and apprehensive about the durability of the car.

The seminal Kentucky decision which addresses the right of the purchaser of an automobile to revoke his acceptance is *Ford Motor Company v. Mayes,* Ky.App., 575 S.W.2d 480 (1979). In the *Mayes* decision, the Court of Appeals quoted with approval from *Zabriskie Chevrolet, Inc. v.*

*Smith,* 99 N.J.Super. 441, 240 A.2d 195, 205 (1968), as follows:

> "For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension."

Each year vendors of automobiles spend millions of dollars to persuade potential customers to purchase their products. Customers are told that if they purchase a particular brand or type of vehicle they will achieve newfound happiness and peace of mind in the knowledge that their vehicle is of superior quality, safety and styling. Great expectations are created and reinforced to persuade the customer to part with his money to make the purchase. In view of this, it is not unreasonable to require the vendor to deliver all or substantially all of that which has been promised.

We conclude that whether the grinding noise substantially impaired the value of the vehicle to the Robertses was an issue of fact which should have been determined by the trier of fact. On this issue we affirm the Court of Appeals.

Our decision on the revocation question resolves one of the issues raised by the Robertses in their cross-appeal: whether CCO improperly used the car by driving it hundreds of miles after redelivery by the Robertses. The Court of Appeals succinctly and accurately stated "If the jury had found that revocation was proper, then CCO's use of its own vehicle was not improper. If the jury had found that revocation was improper, then CCO improperly used the appellants' vehicle" and compensation would be required.

At the time the automobile was sold, appellee, Gary H. Roberts, signed an instrument denominated "Dealer Warranty Disclaimer" in which CCO purported to sell the vehicle "as is" and "with all faults." Appellee, Angie Roberts, did not sign this instrument. CCO insists on enforcement of the Disclaimer and asserts that it made no express warranties and disclaimed any implied warranties.

First, it is clear that this writing has no applicability to General Motors as it is in favor of only the automobile dealer, CCO. Thus appellees' warranty claim against General Motors for breach of its express warranty and any implied warranties which may exist is unaffected by the Disclaimer and the Court of Appeals correctly held that summary judgment in favor of General Motors on the breach of warranty claim was improper. *Volvo of America Corp. v. Wells,* Ky.App., 551 S.W.2d 826 (1977). We need not determine whether the Dealer Warranty Disclaimer was effective against appellee, Gary H. Roberts, since it appears that throughout this litigation the Robertses have not contested the validity or enforceability of this instrument. Therefore, the Robertses are without any claim against CCO for breach of implied warranties. We hasten to add, however, that on the facts presented here, revocation of acceptance and damages for breach of warranty are mutually exclusive remedies. Only if the Robertses are unsuccessful in their claim for revocation of acceptance, a matter unaffected by the warranty disclaimer, will it be necessary to determine whether General Motors breached its warranties. R. Billings, *Handling Automobile Warranty and Repossession Cases, supra,* § 520 (1984).

CCO next contends that the Court of Appeals erred in reversing the trial court's summary judgment dismissing the Robertses' Consumer Protection Act claim. KRS 367.170 and KRS 367.220. This claim was asserted by amended complaint and arose out of the events which followed the accidental damage to the car while it was in the CCO repair shop.

At the outset, it should be remembered that the damage to the finish of the automobile was as the result of simple negligence. There is no allegation of intentional or malicious conduct on the part of CCO in damaging the automobile. Thus, at the time the car was damaged by the fallen light fixture, the Robertses were entitled to compensation for the damage and nothing

more. As an entirely independent transaction, although it may not have been recognized by the parties as such, a separate contract was entered into between CCO and the Robertses for repair of the damage. Neither party was compelled to enter into the contract, but both did so willingly. Thereafter, CCO repainted the car four times in-house and on a fifth occasion had it repainted by an outside body shop. The Robertses were never satisfied with the quality of the work.

■ As best we can determine, the Robertses' Consumer Protection Act claim is predicated on the view that CCO failed to competently repair the damage, but attempted to persuade them that the work was done properly, and that at some point CCO attempted to deceive them as to whether or not "factory" paint had been used. The parties' repair contract was for completed performance and CCO, as the party charged with performance, was entitled to use its skill and judgment as to the method and materials. Whether the performance rendered was satisfactory (whether the paint matched and the finish was smooth) is a matter about which reasonable people might disagree. CCO may have insisted that its performance was satisfactory, but clearly the Robertses did not accept this view. If there was any attempted deception, it was unsuccessful as the Robertses asserted a claim for damages and recovered $925. The recovery of this sum on the negligence claim against CCO represented full compensation as determined by the jury for the damage to the automobile and the shoddy repair work.

Not every failure to perform a contract is sufficient to trigger application of the Consumer Protection Act. The statute requires some evidence of "unfair, false, misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present. *Dare to Be Great, Inc. v. Commonwealth, ex rel. Hancock,* Ky., 511 S.W.2d 224 (1974). There is an analogy between the Consumer Protection Act claim asserted here and a tort claim for bad faith based on an insurer's failure to pay the amount due its policyholder. In *Feathers v. State Farm Fire and Casualty Co.,* Ky.App., 667 S.W.2d 693 (1983), the validity of which was recently reaffirmed in *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176 (1989), the Court of Appeals said:

> "[T]he allegations [of the complaint] show substantial wrongs committed against a clearly protected interest and rights. We are not talking about bad manners or mere breakdowns in communications resulting in irritations injuring pride." *Feathers* at 696.

In this case, we believe the acts complained of fall short of "substantial wrongs" and more nearly amount to "irritations injuring pride." On this issue we reverse the Court of Appeals.

■ Our view with regard to the Consumer Protection Act is likewise dispositive of the Robertses' claim of entitlement to an instruction authorizing the award of punitive damages for negligence in the painting of the car. Relying on this Court's decision in *Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382 (1985), the Robertses contend the jury should have been authorized to award punitive damages. This case bears little, if any, resemblance to *Horton.* In our view, while a combination of CCO's negligence in permitting the light fixture to damage the car and its failure to properly repair the car was sufficient to justify the award of compensatory damages, the evidence was woefully insufficient to justify punitive damages.

We now turn to perhaps the most significant issue in this case: whether the interest on the judgment against the Robertses was correctly or incorrectly calculated.

It should be recalled that the Franklin Circuit Court entered summary judgment in favor of CCO against the Robertses. The judgment was for the amount due under the contract plus interest at the contract rate, 15.5%, from the date the bank accelerated the debt. On appeal, the Court of Appeals reversed the trial court and held that "judgment on notes that become due by reason of acceleration cannot bear interest beyond the time when the note became

due and payable by reason of acceleration." Thus, the Court of Appeals held that during that period of time between acceleration of the indebtedness by reason of default and the date on which judgment is entered, no interest may accrue upon the indebtedness.

Both parties and the courts below rely upon this Court's decisions in *Duff v. Bank of Louisville & Trust Company*, Ky., 705 S.W.2d 920 (1986), and *Credit Alliance Corp. v. Adams Construction Corp.*, Ky., 570 S.W.2d 283 (1978). As it applies to this case, *Credit Alliance* stands for the proposition that a creditor may not declare a debt accelerated and also collect pre-computed but unaccrued interest and finance charges. The *Duff* case goes a step further with a statement upon which the Robertses rely as follows: "[O]n notes accelerated by a bank, *it cannot collect interest beyond the time when the note became due and payable by reason of the acceleration.*" (Emphasis added.) *Duff* at 925. The authority cited for this proposition is *Credit Alliance Corp. v. Adams Construction Corp., supra,* but as stated before, *Credit Alliance* merely precludes collection of pre-computed but unaccrued interest and finance charges, and there is nothing which required the court to go further in *Duff.* Moreover, the statement quoted from *Duff* is ambiguous. It fails to disclose whether the "interest" referred to is "pre-computed" interest or "any" interest, and we must determine which it is.

■ We are of the opinion that a creditor who accelerates an indebtedness by reason of a default should not be deprived of interest which would otherwise accrue during the time between acceleration of the debt and entry of judgment. The law is clear that a creditor is entitled to interest at the contract rate from the date of judgment until it is paid, KRS 360.040, and it is equally clear that interest accrues in accordance with the contract until the date of acceleration. We can think of no rational reason to exclude the period between the date of acceleration and the date of judgment for the accrual of interest. To avoid misunderstanding and recognizing our limi-

tations when using the arcane language of the world of finance, we simply say that a creditor may include in its computation of the amount due *only* such interest as has been earned and actually accrued as of the date of acceleration. However, at the time judgment is entered, the court may award the amount due as of the date of acceleration plus interest at the contract rate from the date of acceleration until paid. The Court of Appeals erred in its resolution of this issue.

The final issue we must decide is whether the contractual attorney fee award should be based on the amount due when the debt was accelerated or the amount due when the judgment was entered. This issue is closely related to, but not necessarily controlled by, whether prejudgment interest is allowed during the period between debt acceleration and entry of judgment. Having determined that such prejudgment interest is allowable, we must also determine whether it is includable in the amount upon which the attorney fee is computed.

The retail installment contract signed by the Robertses contained a provision whereby they agreed to pay a reasonable attorney fee. It was further agreed "that a reasonable attorney fee shall be an amount equal to fifteen percent (15%) of the amount due and payable under the contract." The statutory provision which governs attorney fees in motor vehicle retail installment contracts, KRS 190.100(1)(d), states that: "[T]he retail instalment contract may provide for the payment of attorneys' fees not exceeding fifteen percent (15%) of the amount due and payable under such contract...." Both the contract and the statute utilize the same language to define the amount upon which the attorney fee may be computed.

CCO has cited persuasive Kentucky authority for the proposition that "due and payable" should be interpreted to include amounts presently owed and amounts which may be owed in the future. *Griffith v. Speaks*, 111 Ky. 149, 63 S.W. 465 (1901), *Department of Public Welfare v. Allen*, 255 Ky. 301, 74 S.W.2d 329 (1934), and *Warner v. Lexington Roller Mills, Inc.*,

314 Ky. 1, 233 S.W.2d 988 (1950). This definition is consistent with the common usage of the terms and we can think of no reason to depart from it. For a more fundamental reason, however, we consider it appropriate to construe the statute in a manner which will not deprive the trial court of the discretion allowed by the statute.

It should never be overlooked that any award of an attorney fee is subject to a determination of reasonableness by the trial court. *Duff, supra.* In many cases it would be unreasonable to allow the agreed-upon maximum whether or not the amount due includes prejudgment interest. In simple cases in which the debtor makes little or no defense and in default judgment cases where the time and skill required is minimal, to award the maximum may result in a windfall and constitute an abuse of discretion. In more difficult cases, however, and with due regard for the provisions of SCR 3.130 (Rule 1.5), the allowance of a maximum fee based on the amount due on the date of acceleration plus prejudgment interest may be appropriate. The trial judge is generally in the best position to consider all relevant factors and require proof of reasonableness from parties moving for allowance of attorney fees. In exercising its discretion, a trial court should require parties seeking attorney fees to demonstrate that the amount sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred.

In the instant case, the trial court allowed an attorney fee of $2,000 based on a contested judgment of $13,907.74. On the surface, this would not appear to be improper based upon the contract, the statute, and a reasonable exercise of the trial court's discretion. The trial court erred, however, when it included in the judgment amount the sum of $900 in attorney fees previously awarded in favor of State Bank against CCO after CCO had refused to repurchase the "with recourse" retail installment agreement it had assigned to the bank. The "with recourse" assignment from CCO to State Bank was entirely separate from the dispute between the Robertses and CCO. As such, the Robertses should not be required to pay the attorney fee occasioned by CCO's refusal to perform under its contract.

To summarize this issue, we reverse that portion of the Court of Appeals' opinion which limits recovery of attorney fees to a sum based upon the amount due on the date of acceleration. On remand, the trial court may, in the exercise of its sound discretion, include for the purpose of computing the amount of attorney fees the entire amount of the judgment including prejudgment interest. Of course, the judgment should be corrected to exclude the $900 attorney fee incurred by CCO.

Upon remand, if this case is tried and results in a verdict for the Robertses on their revocation of acceptance claim, a number of the issues addressed herein will be rendered moot. If they prevail, the Robertses will be entitled to judgment for reimbursement of all sums they paid toward the purchase of the vehicle plus interest thereon at the rate applicable to judgments from date of each payment until the day they get their money, and to whatever further incidental and consequential damages are provided for by law in the Kentucky Uniform Commercial Code. If the Robertses do not prevail on their revocation of acceptance claim, damages may be awarded against General Motors for breach of warranty if the evidence justifies such an award and the jury so finds. If the Robertses fail to prevail on either of these claims, they will be liable to CCO for the amount due under the contract plus interest and attorney fees as we have directed computation thereof less the amount received by CCO when it resold the vehicle. Proof should be required as to the amount received by CCO upon resale, the date the proceeds were received, and such sum should be credited against the amount owed by the Robertses, and interest on that amount would not thereafter accrue.

This cause is remanded to the trial court for further proceedings not inconsistent herewith.

STEPHENS, C.J., LEIBSON, REYNOLDS and SPAIN, JJ., and FRANCIS D. BURKE, Special Justice, concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice dissenting.

I respectfully dissent from that part of the majority opinion which relates to calculation of interest on the judgment and from the application of the Consumer Protection Act.

This unfortunate series of events began on the very first day the Robertses purchased their new 1985 Oldsmobile Calais on January 15, 1985, when they noticed a grinding noise coming from the front of the automobile. The dispute between the parties has continued to this very day.

The circuit court entered a summary judgment in favor of Capitol Cadillac and General Motors. The Robertses were ordered to pay $13,907.74, the amount due under the Retail Installment Contract, plus 15.5 percent annual interest until satisfied, and $2,000 for Capitol's attorneys fees.

From a technical and legal aspect, the most important issue is whether a creditor who accelerates a loan with precomputed interest is entitled to prejudgment interest from the date the debt is due until the date of judgment. On that question I believe the Court of Appeals was correct in the reasoning it applied to the calculation of interest on the judgment. During the period of time between the acceleration of the indebtedness by reason of default and the date on which judgment was entered, no interest should accrue on the indebtedness. *Cf. Duff v. Bank of Louisville & Trust Co.*, Ky., 705 S.W.2d 920 (1986), citing *Credit Alliance Corp. v. Adams Construction Corp.*, Ky., 570 S.W.2d 283 (1978). Accordingly, the most Capitol could obtain is a judgment that included the interest accrued up to the time of acceleration. Such a judgment would have interest at the rate of 15.5 percent per annum as stated in the note. KRS 360.040.

From the point of view of the Consumer Protection Law, the most important issue is the use of the Consumer Protection Act in this situation. The Robertses did receive a verdict for the negligent repainting claim in the amount of $925, but the circuit judge refused to give a punitive damage instruction.

The Court of Appeals correctly determined that the amended complaint of the Robertses raised the issue that GM and Capitol violated the Consumer Protection Act, KRS Chapter 367. The Robertses sought punitive damages from Capitol, and sufficient evidence of unfair and unconscionable trade practices was present to make summary judgment on this claim improper.

A careful review of the record of this extended legal dispute indicates that there does exist a material fact which requires a trial and that the circuit court was not authorized to render summary judgment. The controlling facts are in dispute and the claims have substance. Summary judgment is not a substitute for trial and the circuit court must examine the evidentiary matter not to decide a question of fact, but only to discover if a real issue exists. All doubts are to be resolved in favor of the party opposing summary judgment.

I must strongly disagree with the statement that the acts complained of here fall short of substantial wrongs and are more likely to be "irritations." Capitol failed five times to satisfactorily repaint the automobile. Representatives of Capitol on several occasions misrepresented the status and quality of the paint job. The Robertses were told that it was necessary to order paint from the factory when the evidence indicated that Capitol had purchased it from a local auto parts dealer. There was sufficient evidence of outrageous conduct on the part of Capitol to have permitted an instruction on punitive damages in relation to the negligent painting of the automobile.

If the public cannot use the Consumer Protection Act in this type of situation then we have returned to the days of absolute reliance on *caveat emptor* or let the buyer beware. It is not for this Court to deter-

mine the amount of recovery but only the right to recovery.

In this commercial sales dispute, the combination of interest calculation and lack of punitive damages have left the Robertses at a considerable disadvantage. Let the buyer beware!

I would affirm the decision of the Court of Appeals in all respects.