IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 19, 2008 Session

## GENE ANDERSON, ET AL. v. LAMB'S AUTO SERVICE, INC.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-001227-05     Jerry Stokes, Judge

---

### No. W2008-01305-COA-R3-CV - Filed March 5, 2009

---

Plaintiffs/Appellees bring this case pursuant to the Tennessee Consumer Protection Act and a negligent bailment theory. They allege that auto service center made poor cosmetic repairs to interior of their car and that exterior of the car was damaged while at the service center. Finding no violation of the Tennessee Consumer Protection Act and that Defendant/Appellant failed to overcome presumption of negligent bailment, we affirm in part and reverse in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

John W. Leach, Memphis, Tennessee, for the appellant, Lamb's Auto Service, Inc.

Kevin A. Snider, Germantown, Tennessee, for the appellees, Gene Anderson and Dorothy Anderson.

### OPINION

### Procedural History

In 2003, Plaintiffs/Appellees Gene and Dorothy Anderson (together "the Andersons") sought to have their 1993 BMW ("the car") refurbished. On September 8, 2003, they had the exterior of the car painted at Dobbs Collision, and a month later they brought the car to Defendant/Appellant Lamb's Auto Service, Inc., ("Lamb" or "Lamb's Auto") for interior renovations. Although the parties disagree about what repairs, specifically, Lamb's Auto was to make to the car, both parties concede that the Andersons requested Lamb's Auto to replace two interior door panels, replace the headliner,[1] and re-cover the two front seats. When Lamb's Auto returned the car, the Andersons were displeased with Lamb's work. Subsequently, the Andersons commenced this suit against

---

[1]The headliner is the fabric that adheres to the inside roof of an automobile.

Lamb's Auto in the General Sessions Court of Shelby County alleging breach of contract, fraud, and violation of the Tennessee Consumer Protection Act. The general sessions court entered judgment in favor of the Andersons, and Lamb's Auto appealed to circuit court.

The circuit court held a bench trial on July 11, 2007, and entered judgment for the Andersons. The court found that Lamb's Auto breached its contract with the Andersons and violated the Tennessee Consumer Protection Act. The court awarded the Andersons $5,241.52 in compensatory damages and $5,221,50 for attorney fees, but it denied treble or punitive damages. Upon request for findings of fact and conclusions of law, the court adopted the oral rulings it made at the conclusion of proof on July 11, 2007. Specifically, the court found that Lamb's Auto engaged in a deceptive trade practice, "namely in the use of parts which were not stated in the invoice." Lamb's Auto filed a timely notice of appeal to this Court on May 21, 2008.

**Issues Presented**

On appeal, Lamb's Auto alleges three separate issues:

(1)     The [trial] court was led into error in finding any violation of the Tennessee Consumer Protection Act,

(2)     The [trial] court erred in awarding damages for any "overspray"[2] of the vehicle, and

(3)     The [trial] court erred in awarding attorney's fees in practically an equal amount of the compensatory damages.

In addition, the Andersons argue that the trial court erred by not awarding the full amount of attorney's fees that they incurred. The Andersons also request attorney fees for this appeal.

**Standard of Review**

Because the trial court adjudicated this case without a jury, we review the decision *de novo* upon the record and presume the correctness of the trial court's factual findings. Tenn. R. App. P. 13(d); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). If the trial court fails to make findings of fact, however, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). On the other hand, we

_____

[2]Overspray is paint and clear coat that flies in the air when painting a car, that may land on and coat objects in the surrounding area. It causes the paint on nearby cars to appear dull.

review the trial court's application of law *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## Testimony

At trial Mrs. Anderson testified that she brought her car to Lamb's Auto because she wanted the interior to look like new. When she delivered the car she spoke to Mr. Ellidge,[3] the shop manager. Either Mr. Ellidge, the store manager, or Mr. Lamb, the President of Lamb's Auto, wrote out Mrs. Anderson's invoice. The invoice was written on a Lamb's Auto Service ticket and the following was the handwritten notation of the work to be done:

| | |
|---|---|
| Recover [sic] 2 bucket seats | 1200 |
| Headliner & Ring | 365 |
| L & R door pads | 300 |

Mrs. Anderson testified that her understanding was that Lamb's Auto would replace the headliner, replace the interior with new factory door panels, and re-cover the two front seats. But at trial, Mrs. Anderson also explained that she had not really discussed specifics regarding what Lamb's Auto was to do to the door panels.[4] In addition, she explained that although she had picked out the color, she was unsure what quality material the front seats were to be re-covered with.[5] Mr. Lamb testified, on

---

[3] Apparently, there is some uncertainty about the pronunciation and spelling of the shop manager's name.

[4] Mrs. Anderson testified to the following at trial:

Question: Okay, so you actually signed this invoice at the time of the contract, which there's a date on there of October 13 of '03?
Answer: That's correct.
Question: Okay. And what, based upon your discussions in this document, what was your understanding of specifically what they were going to do?
Answer: Well, the headliner was to be changed – – was to be changed out, he was going to replace the headliner, and he was going to replace the door panels and the two front seats.
Question: Now, did y'all talk specifics in regard to the door panels as to what would be done?
Answer: Yes, he was supposed to replace the door panels.
Question: Okay. With leather, plastic, what, or did y'all discuss it?
Answer: Well we didn't really discuss it.

[5] Mrs. Anderson also stated,

Question: But you recall picking - - selecting the color to recover [sic] the seats, that's correct?
Answer: Yes.
Question: All right. And you understood it was going to be vinyl, didn't you? You didn't think you were going to get leather, did you?
Answer: I'm not sure what he - - what it is supposed to be, all I know is it was supposed to

(continued...)

the other hand, that the written invoice indicated that the headliner, front seats, and door panels were all to be re-covered. A notation written on Lamb's copy of the invoice indicated the color Mrs. Anderson had selected to put on the seats, which was available as a vinyl material.

In total, Mrs. Anderson had her car serviced at Lamb's Auto four times. She first noticed her dissatisfaction with Lamb's work after she paid her $ 2,637.51 bill and brought her car home. She noticed that the interior door panels were sticky, as though they had been painted and not replaced, and the headliner ring looked as though it had been crookedly pieced together. Mrs. Anderson testified that she returned the car to Lamb's Auto, for the second time, on the following day. When she picked the car up, Mrs. Anderson noticed that the door panels appeared to have been replaced, but they were fastened to the interior of the door with screws. Mr. Ellidge told Mrs. Anderson to bring the car back a third time so that he could fix the headliner ring around the sunroof. Mrs. Anderson explained that when she got the car back the third time, Lamb's Auto had taped the headliner up, and Mr. Ellidge told her to keep it taped up for a few days because he needed to re-glue it. For the fourth time, Mrs. Anderson sent her husband to drop the car off, but no one was available to work on it at that time. Thereafter, the Andersons demanded a refund of the $2,637.51 they had previously paid, and Lamb's Auto refused to give the Andersons their money back.

At some point, Mrs. Anderson became concerned that the exterior of her car seemed dull, so Clarence Bailey ("Mr. Bailey") came with her to Lamb's Auto to pick the car up. Mr. Bailey had painted the exterior of Mrs. Anderson's car a month earlier. Mr. Bailey determined that there was overspray on the exterior of the car which was causing the dull appearance. At trial, Mr. Bailey testified that he estimated the cost of repairing the overspray damage to be $1,374.46. Although Lamb's Auto did not do any painting or work on the exterior of the car, Mrs. Anderson testified that she had seen a man using a spray paint gun inside the shop where her car was parked.

At some point, the Andersons also asked Jerry Benefield ("Mr. Benefield"), the manager at Don's Auto Upholstery, to inspect the car and estimate the costs for the various cosmetic repairs they wanted done. Based on Mr. Anderson's requests, Mr. Benefield estimated the price for installing new factory door panels, factory floor carpet, re-covering the seats and headrests in leather, and re-covering the headliner. The estimate total was $5,352.16. At trial, the Andersons showed Mr. Benefield pictures taken of the car in December 2003. Mr. Benefield testified that many of the repairs, including the taped headliner, screws in the loosened door panels, unsecured headliner, and undone or torn leather on the headrest, would be poorly done if they were the result of a repair. Mr. Benefield acknowledged, however, that screwing in door panels is a last resort, and not considered substandard work when replacing door panels where the plastic clips that normally hold in the panels have broken or deteriorated.

---

[5](...continued)
    be recovered [sic].

Mr. Lamb also testified at trial about the equipment that it uses to paint a car's exterior. Mr. Lamb stated that all painting is done in a painting booth. The painting booth is enclosed on all sides with a ventilation system that filters the air through an exhaust fan and draws it up and out through the back of the booth. This system was similar to the painting booth Mr. Bailey testified he uses to keep cars from being oversprayed. Mr. Lamb also testified that the spray guns that they use in the shop contain glue, not paint, although the two types of spray guns look exactly alike. Mr. Lamb also testified that Lamb's Auto did put salvaged door panels on Mrs. Anderson's car; he did not tell her that they were either new or used, but the price reflects that Lamb's Auto installed salvaged doors. Mr. Lamb stated that he often uses salvaged doors on older cars, and that when he repairs cars pursuant to an insurance contract, the insurance company rarely approves installing new parts on a ten-year old car.

## Analysis

At trial, the Andersons argued two separate theories of liability. First, the Andersons alleged that the repairs Lamb's Auto made to restore the vehicle breached their contract and violated the Tennessee Consumer Protection Act. Second, the Andersons argued that Lamb's Auto was responsible for the overspray damage pursuant to a negligent bailment theory. Lamb's Auto argues on appeal that it did not violate the Tennessee Consumer Protection Act, that the trial court erred in awarding damages for any overspray, and that the attorney fee award was error. We address each argument in turn.

## Tennessee Consumer Protection Act

A plaintiff seeking to recover under the Tennessee Consumer Protection Act ("TCPA") must prove (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA, and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). Whether a specific representation in a particular case is unfair or deceptive under the Tennessee Consumer Protection Act is a factual question. *Id.* at 116 Because the Tennessee Consumer Protection Act does not define "deceptive" and "unfair," the standards used to determine whether an act or representation is deceptive or unfair is a legal matter. *Id.* As this Court has discussed, "[a] deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id.* Defendant's conduct need not be willful or knowing for a court to award actual damages and attorney fees for violating the TCPA, and a merchant can mislead a consumer through its statements, silence, or actions. *Id.* at 115–16.

The Andersons' argument at trial was that Lamb's Auto violated several specific provisions of the Tennessee Consumer Protection Act. The most relevant of these is the Andersons' allegation that Lamb's Auto "represent[ed] that goods are original or new [when] they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand" and "represent[ed] that goods or services are of a particular standard, quality or grade, or that goods are

of a particular style or model, if they are of another." Tenn. Code Ann. § 47-18-104(b)(6)- (7). The trial court held that Lamb's Auto engaged in a deceptive trade practice because Lamb's Auto used parts which were not stated in the invoice.

As we have previously articulated, however, breach of a contract and violation of the TCPA are two different actions, and proof of the existence of one does not necessarily establish existence of the other. *Hall v. Hamblen*, No. M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. 2004). "A party bringing a TCPA action must prove that there was some deception, misrepresentation or unfairness, regardless of any breach of contract." *Id.*; *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305–06 (Tenn. Ct. App. 1984). We find, however, that the evidence in this case preponderates against the trial court's finding that the Andersons were entitled to relief under the TCPA. Nothing in the proof reveals a misrepresentation or unfair or deceptive practice. As the Kentucky Supreme Court eloquently stated,

> [t]he parties' repair contract was for completed performance . . . the party charged with performance was, entitled to use its skill and judgment as to the method and materials. . . .
> . . . . The statute requires some evidence of "unfair, false, misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties .
> . . .
> . . . . We are not talking about bad manners or mere breakdowns in communications resulting in irritations injuring pride.

*Capital Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) (citations omitted). The record in this case contains no evidence of any representations by Lamb's Auto regarding the quality of its work, no representations regarding the quality of the goods that Lamb's Auto provides with its services, and the invoice did not indicate whether new or used parts were to be installed.[6] We find, therefore, that the evidence preponderates against the circuit court's finding that Lamb's Auto violated the Tennessee Consumer Protection Act.

### Damages for "Overspray"

On appeal, Lamb's Auto argues that there was insufficient proof to establish that the overspray damage was the proxmiate result of any negligence by Lamb's Auto. In inquiring whether there is sufficient proof of negligence, we consider the burden shifting that occurs when a party alleges a negligent bailment. By statute, a bailor establishes a prima facie case of a bailee's negligence if it proves 1) the property was delivered to the bailee in good condition, 2) bailee failed

---

[6]We are aware of this Court's decision in *Coleman v. Proyor Oldsmobile/EMG*, where we found that a car dealership violated the Tennessee Consumer Protection Act by failing to disclose a paint defect on a demonstrator car although it made no representation that the car was new. *Coleman v. Proyor Oldsmobile/EMG*, No. 38887-7 T.D., 1996 WL 544440, at *2 (Tenn. Ct. App. 1996). In *Coleman*, however, we were bound by the statutory definition that the demonstrator car was sold as new because it had not previously "been the subject of a sale at retail to the general public." *Id.*; *see* Tenn. Code Ann. § 47-18-119 (1995); Tenn. Code. Ann. § 55-5-106(e) (1993).

to return the property in accord with a contract or returned it in a damaged condition, and 3) the damage was not due to the inherent nature of the property bailed. Tenn. Code Ann. § 24-5-111. Once a bailor establishes a prima facie case, the burden shifts to the bailee to produce evidence and persuade the trier of fact that the damage was not caused by the bailee's negligence. *Mathews v. Cumberland Chevrolet Co.*, 640 S.W.2d 582, 584–85 (Tenn. Ct. App. 1982). At trial, Mrs. Anderson testified that when she dropped her car off at Lamb's Auto there was no overspray on the car, but when she picked it up the car looked dull and there were flakes later identified to be overspray. This shifted the burden to Lamb's Auto to prove that the damage was not caused by the bailee's negligence. On appeal, Lamb's Auto argues that it met this burden. We disagree.

As no findings of fact were made on this argument other than the rendering of the judgment, our review of this matter is *de novo* upon the record of the trial court. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). To rebut the presumption of negligence, Lamb's Auto offered proof of the general precautions that it takes to avoid overspray damage. In addition, Lamb's Auto claims that no paint work was performed while plaintiffs' vehicle was in defendant's shop. This evidence, however, is not sufficient to rebut the presumption of negligence. As this Court articulated in *Stevens v. Moore*, 139 S.W.2d 710, 717 (Tenn. Ct. App. 1940), "the bailee's duty in this respect includes production of evidence that the loss was not attributable to any want of due care on his part, and that to this end he is bound to disclose fully, in so far as he can, the manner in which the loss occurred, the facts and circumstances attending it, and the precautions taken to prevent it." *Id.* at 717 (quoting 6 Am. Juris § 379). Lamb's Auto failed to produce evidence of what particularly happened to the Andersons' car; where a defendant fails to produce any evidence whatsoever to account for the damage of the property, it cannot be said that they have sustained their burden by proving that the damage was not caused by the their own negligence. *Murphy v. Co-operative Laundry Co. of St. Paul*, 41 N.W.2d 261, 262–63 (Minn. 1950). We find, therefore, that Lamb's Auto failed to prove that its negligence did not damage the exterior of the Andersons' car, and affirm the judgment of the trial court that Lamb's Auto breached the contract.

### Attorney Fees

Lamb's Auto also argues that the circuit court erred in awarding attorney fees in practically an equal amount of the compensatory damages. In addition, the Andersons raise the additional issue that the trial court erred because it did not award them the full amount of attorney fees they requested. In light of our determination that Lamb's Auto did not violate the Tennessee Consumer Protection Act, the Andersons are not entitled to recover attorney fees.

### Conclusion

For the foregoing reasons, we affirm in part and reverse in part. We reverse the trial court's judgment granting the Andersons damages and attorney fees as an award for violation of the Tennessee Consumer Protection Act. We remand to the trial court for further proceedings limited

to the amount of damages incurred as a breach of contract with respect to the overspraying. The Andersons' request for attorney fees on appeal is denied. Costs of this appeal are taxed one-half to the Appellee, Gene and Dorothy Anderson, and one-half to the Appellant, Lamb's Auto Service, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE