J. M. DUZAN, APPELLANT, v. S. L. CANTLEY, COMMISSIONER OF FINANCE, ETC., RESPONDENTS.—55 S. W. (2d) 711.

Kansas City Court of Appeals.   December 19, 1932.

*Howell H. Heck* for appellant.

*J. R. Hales, Lyman J. Bishop* and *D. C. Chastain* for respondent.

TRIMBLE, J.—In this action, plaintiff, (a holder of a certificate of time deposit of $602.53 in the Peoples Bank of Rich Hill, Missouri, at the time it closed its doors on April 27, 1930, and defendant Cantley, State Commissioner of Finance, was placed in charge thereof), sues to have said deposit declared a preferred claim against the assets of said defendant bank.   Special Deputy Commissioner of Finance, Keinberger, was placed in charge, but he was afterwards removed and others put in his place, and then the said special deputy was reinstated and again placed in charge of said bank's affairs.

When the bank closed, and at the time of the trial herein, the bank had enough money on hand to pay all preferred claims, together with the expenses of liquidation, and also to settle plaintiff's as a preferred claim.

Plaintiff was the beneficiary in a policy of *war risk* insurance on the life of his son, a member of the American Expeditionary Forces in the Great War; and, upon the son's death, payments of $57.53 per month were paid to plaintiff by Government on account of said policy.   Plaintiff placed $575 of savings arising from these monthly payments in said bank on *time deposit*, and when that matured, the accumulated interest was added and the whole amount, aggregating $602.53 was again put in a time deposit, the certificate therefor being

for said sum, viz., $602.53, and was derived wholly from the saving of the funds paid to the plaintiff by the U. S. Government as aforesaid. Plaintiff informed the cashier of said bank, at the time of making the time deposit therein, of the source of said funds and the nature of said account. When the bank failed the whole of said sum represented by the said certificate of time deposit went into the hands of said Commissioner of Finance, and he now has the said fund in his possession.

After proper notice for the presentation and allowance of claims, the one involved herein was duly, and in proper time, presented to, and was allowed by, said Commissioner of Finance as a *common* claim, and more than sixty days had elapsed since the expiration of the time for filing claims with the commissioner before this suit was filed, and by him said claim was approved merely as a *common* claim.

After its allowance as such against the assets of the bank, plaintiff, on July 13, 1931, brought suit to have it allowed as a preferred claim.

The case was submitted upon an agreed statement of facts, which contain the facts hereinbefore set out and also the following further facts:

1. That said time deposit was not due at the time the bank closed, and, when presented for allowance, claimant did not ask to have it allowed as a preferred claim.

2. That this claim for preference was filed in the circuit court more than sixty days after, and within six months from, January 29, 1931, the final date set for the presentation and allowance of claims.

3. That claimant never filed, either with the commissioner or with the court, objections to the order classifying claims, but no special order has been made heretofore denying the claims as preference.

4. That the deposit arose from the source as hereinbefore stated.

5. That claimant is not indebted to said bank nor is said bank entitled to any credit or setoff against this claim, except that on May 15, 1931, the court made an order directing the special deputy in charge to pay all *general* claimants a divided of ten per cent, which was done, and pursuant thereto, claimant received said ten per cent amounting to $60.25.

The court refused to order it paid as a preferred claim.

We find no necessity of going into the effect of the failure to ask a preference at the presentation of the claim to the commissioner, nor of the effect of the receipt of the ten per cent dividend paid while it was still an allowance as a common claim. This, for the reason that the question of whether it is properly allowable, in any event, as a preferred claim, can be determined irrespective of these facts.

It is well-settled that, in order for a claim to be given a preferred standing, some relation of trust must exist. If the relation between

the bank and claimant be that of debtor and creditor no preference can be given. [Paul v. Draper, 158 Mo. 197; Butcher v. Butler, 134 Mo. App. 61; Mattes v. Cantley, 39 S. W. (2d) 412.]

But plaintiff's contention, or claim for preference, is based on the fact that the funds here in controversy originated or came from moneys paid to him as insurance due him from the Government on a policy of war risk insurance on his son who was a veteran in the world war. And plaintiff relies upon the World War Veterans Act of Congress of 1924 found in United States Code Annotated, Title 38, par. 454, p. 217, which provides that such funds as those involved herein *"payable* under Parts II, III, and IV, respectively, *shall not be assignable;* shall not be *subject to the claims of creditors* of any person to whom an award is made . . .; and *shall be exempt from all taxation.* Such . . . insurance . . . shall be subject to any claims which the United States may have . . . against the person on whose account the . . . insurance . . . allowance is *payable.''*

"The provisions of this section shall not be construed to prohibit the assignment by any person to whom converted insurance *shall be payable* . . . of his interest in such insurance to any other member of the permitted class of beneficiaries." And from this it is argued that the money shall not be subject to the claims of creditors, and since there can be no assignment or garnishment or other proceedings against the beneficiary, therefore the relationship of debtor and creditor cannot exist especially where the bank takes the fund with knowledge of the source thereof.

This contention is on the theory that the purpose and intent of the legislation in behalf of veterans is to protect the money from all claims, except the U. S. Government, not only until it comes into the hands of the beneficiary, but also until the latter has himself spent it. We think this is not the correct construction or interpretation to be placed thereon. In our view, funds thus arising are not thus protected *after* they have once *come into the hands* of the beneficiary. They have then become his *absolute* property, and having once come into his hands is no longer an object of solicitude or care on the part of the government. The latter is careful to protect the fund until the beneficiary receives it, but no further. This seems to be clear from the use and subsequent reiteration of the word "payable." So long as a fund is "payable" to a person it has not yet reached his hands, but when it has, it can no longer be said to be *payable* to him. This is borne out by the plain intent of Sec. 54, page 81, of the above mentioned U. S. C. A., where, in protecting money *due* pensioners, attachment, levy, or seizure of such funds is prohibited, it speaks of money *"due,* or *to become due"* to any

pensioner, "whether the same remains with the Pension Office or any officer or agent thereof, or *is in course of transmission* to the pensioner." It is not exempt after it is paid to the pensioner. McIntosh v. Aubrey, 185 U. S. Supreme Court Rep. 122, 124, 125, decided April 7, 1902.] See also on the point herein considered, State ex rel. v. Board of Com'rs., 294 Pac. 915; Martin v. Guilford, 158 S. W. 847; Bostrom v. Bostrom, 236 N. W. 732.

Certain cases are cited by plaintiff construing the statutes as to pension moneys, which perhaps *do* appear to support his contention, at least by analogy, but the case of McIntosh v. Aubrey, supra, decisively settles the question involved in this case, and the cases cited in connection with it follow and apply the same rule of decision announced therein. So that the cases cited by plaintiff are not authorities now sustaining his view.

The deposit was a general one, and it conclusively appears from the record that it is one on which the bank was paying interest- so that there is no escape from the conclusion that only the relation of debtor and creditor existed between them, and no semblance of a relation of trust necessary to support a preference.

The judgment is affirmed. All concur.