**SSM HEALTH CARE SYSTEM d/b/a St. Mary's Health Center, Plaintiff/Appellant,**

v.

**Peggy A. BARTEL, Rose Marie Sept and Missouri Family Trust Board of Trustees, Defendants/Respondents.**

No. 67501.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1996.

Application to Transfer Denied Feb. 20, 1996.

Gerald J. Bamberger, St. Charles, Robert H. Sihnhold, St. Louis, for appellant.

Christopher J. Doskocil, Sunset Hills, Elizabeth A. Malench, St. Louis, for respondents.

DOWD, Judge.

SSM Health Care System d/b/a St. Mary's Health Care Center (SSM) appeals from the trial court's order dismissing, with prejudice, SSM's cause of action to "Set Aside Fraudulent Conveyance". We reverse and remand.

Peggy Ann Bartel and K–Mart Corporation (K–Mart) reached a settlement agreement concerning a November 7, 1980, work-related injury suffered by Bartel while she was employed by K–Mart. The settlement set out K–Mart had previously paid $16,862.23 to Bartel in compensation and $56,796.27 for Bartel's medical expenses. The settlement required K–Mart to make an additional $40,000 lump sum payment for compensation. Bartel's attorney was directly paid $17,025.20 of this amount for attorney fees and expenses. The remaining $22,974.80 was payable to the Missouri Family Trust[1] for the creation of an irrevocable trust with Bartel as the beneficiary. The stated purpose for making payment in this manner was to "avoid the claims of creditors and not effect past, present and/or future social security or other government support benefits for which Peggy Ann Bartel would otherwise qualify." On November 19, 1992, the Division of Workers' Compensation approved the settlement.

On December 1, 1992, SSM received a judgment against Bartel for the sum of $55,285.23 plus costs for unpaid medical services rendered in treatment of the injuries which gave rise to Bartel's workers' compensation action against K–Mart. Although the settlement of the workers' compensation action had been approved in November, the record shows execution on the judgment was stayed the lesser of sixty days or the conclusion of the workers' compensation action.

SSM subsequently discovered the existence of Bartel and K–Mart's settlement and its provisions concerning the manner of payment. On May 11, 1993, SSM filed a "Petition to Set Aside Fraudulent Conveyance", naming Bartel, the Missouri Family Trust Board of Trustees, and Rose Marie Sept (a co-trustee of the trust agreement) as defendants. In its petition, SSM asserted that payment to and receipt by Missouri Family Trust Board of Trustees was void because the transaction failed to comply with the requirements of § 402.199(5) and § 402.205(1), RSMo 1994, of the statutes governing the Missouri Family Trust Fund. SSM additionally asserted the transaction was contrary to § 428.024 and § 428.029, RSMo 1994, of the Missouri Uniform Fraudulent Transfer Act. SSM asked, *inter alia*, for an order of execution against the $22,974.80 held by Missouri Family Trust Board of Trustees.

Bartel and Sept filed a motion to dismiss citing § 287.260, RSMo, of the Missouri Workers' Compensation Act. The trial court sustained this motion and dismissed SSM's cause with prejudice and assessed costs against SSM.

██ SSM appeals asserting the trial court erred in dismissing its cause because, *inter alia*, § 287.260.1 does not exempt the benefits paid to Bartel from execution.[2]

---

1. The Missouri Family Trust Fund is a legislatively created government trust, *see* §§ 402.199–225, RSMo 1994, for the purpose of "encouragement, enhancement and fostering of the provision of medical, social or other supplemental services for persons with a mental or physical impairment by family and friends of such persons." § 402.199.2, RSMo 1994.

2. Bartel and Sept raise two additional issues on appeal. Both these issues were raised and denied in the motion for summary judgment. Furthermore, the trial court's dismissal was based

SSM argues § 287.260.1 protects workers' compensation benefits only prior to their payment to the claimant. In reviewing a circuit court's dismissal of a petition, we determine whether the facts pleaded and all reasonable inferences therefrom state any ground for relief. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). "A petition will not be dismissed for failure to state a claim if it asserts any set of facts which, if proved, would entitle the plaintiff to relief." *Id.*[3]

Section 287.260.1 reads:

1. The compensation payable under this chapter, whether or not it has been awarded or is due, shall not be assignable, shall be exempt from attachment, garnishment, and execution, shall not be subject to setoff or counterclaim, or be in any way liable for any debt and in case of insolvency of an employer or insurer, or the levy of an attachment or an execution against an employer or insurer shall be entitled to the same preference and priority as claims for wages, without limit as to time or amount, except that if written notice is given to the division or the commission of the nature and extent thereof, the division or the commission may allow as lien on the compensation, reasonable attorney's fees for services in connection with the proceedings for compensation if the services are found to be necessary and may order the amount thereof paid to the attorney in a lump sum or in installments. . . .

To resolve whether the protection of the § 287.260.1 exemption remains with an award even after actual payment to the claimant, we must focus on the phrase defining the exempt benefits: "The compensation *payable* under this chapter, whether or not it has been awarded or is due, . . . ." (Emphasis added). In *Duzan v. Cantley*, 227 Mo. App. 670, 55 S.W.2d 711 (1932), the Court of Appeals was similarly faced with determining whether an exemption contained in the

World War Veterans' Act of Congress of 1924, 38 U.S.C.A. § 454, protected benefits even after paid to the beneficiary. As here, the defining term of the exemption was the word "payable":

"[funds] *payable* under Parts II, III, and IV, respectively, *shall not be assignable;* shall not be *subject to the claims of creditors* of any person to whom an award is made; * * * and *shall be exempt from all taxation. . . .*" (Emphasis in original). *Duzan* 55 S.W.2d at 712 (quoting 38 U.S.C.A. § 454, p. 217). The Court of Appeals held:

This contention is on the theory that the purpose and intent of the legislation in behalf of veterans is to protect the money from all claims . . . not only until it comes into the hands of the beneficiary, but also until the latter has himself spent it. We think this is not the correct construction or interpretation to be placed thereon. In our view, funds thus arising are not thus protected *after* they have once *come into the hands* of the beneficiary. They have then become his *absolute* property, and having once come into his hands are no longer an object of solicitude or care on the part of the government. The latter is careful to protect the fund until the beneficiary receives it, but no further. This seems to be clear from the use and subsequent reiteration of the word "payable." So long as a fund is "payable" to a person it has not reached his hands, but when it has, it can no longer be said to be *payable* to him. . . . (Emphasis in original).

*Id.*

■ We are similarly bound by the clear meaning of the word "payable," and hold the § 287.260.1 exemption does not protect Missouri workers' compensation benefits once paid to the claimant. This interpretation is supported by other language in the statute. The statute clarifies that "compensation payable" includes funds "whether or not it has

solely on § 287.260.1. We address only this issue.

**3.** Bartel argues that the court's dismissal should be treated as a summary judgment rather than a dismissal of the petition. Bartel did motion the court for summary judgment, and this motion

was denied. However, the court granted Bartel and Sept's subsequent motion to dismiss. We choose to treat the acts of the trial court according to the language the parties and the court attached to those acts. Therefore, we treat this appeal as a review of a dismissal.

been awarded or is due...." Both these clarifying terms, "awarded" and "due," refer to the benefit in its prepayment form. The statute does not include any terms indicative of funds once paid to the claimant. *Compare* Federal Social Security Law, 42 U.S.C.A. § 407 (exempting social securities benefits "paid or payable"). Furthermore, § 287.260.1 describes the protection afforded "compensation payable" in the case of employer/insurer insolvency or levy or attachment against an employer/insurer. These provisions would be necessary only if "compensation payable" referred to prepayment funds.

We are aware that other states have found a legislative intent to exempt workers' compensation benefits even after payment. *See, e.g., Lively v. Blue Cross Hospital Service, Inc.,* 488 S.W.2d 474 (Tex.Civ.App.1972); *State ex rel. Harry v. Dist. Court of Ninth,* 192 Mont. 332, 628 P.2d 657 (1981); *General Motors Acceptance Corp. v. Falcone,* 130 N.J.Super. 517, 327 A.2d 699 (D.C.1974). However, the various states are divided on this issue. *See Annot.: Construction and Effect of Statutory Exemptions of Proceeds of Workmen's Compensation Awards,* 31 ALR3d 532 (1970) and collected cases. Generally, those states holding the compensation benefits are exempt even after payment rely on the specific language of the statute and the policy that workers' compensation is intended to supply the injured employee with sufficient funds to enable him to function without being a burden to others or the state. While we are cognizant of a similar policy in Missouri, *see Patton v. Patton,* 573 S.W.2d 71, 72–73 (Mo.App.1978), as well as the statutorily imposed policies that the provisions of the Missouri Workers' Compensation Law be liberally construed with a view to public welfare and that all doubts are to be resolved in favor of the employee, *State ex rel Lakeman v. Siedlik,* 872 S.W.2d 503, 505 (Mo.App.W.D. 1994); § 287.800, RSMo 1994, we cannot permit observance of these policies to defeat the clear and unambiguous meaning of the statute. We find the intent of the legislature clearly on the face of § 287.260.1; we need not resort to policy considerations to guide a construction of it.

Accordingly, we find that the payments made to Bartel were not exempt from execution by a judgment creditor. Thus, SSM has stated a claim for fraudulent conveyance. We reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.

CRAHAN, P.J., and CRANDALL, J., concur.